**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEARNING RESOURCES, INC., <br><br> and <br><br> HAND2MIND, INC., <br><br><br>         Plaintiffs, <br><br>     v. <br><br> DONALD J. TRUMP, President of the United States, in his official capacity; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity; U.S. DEPARMENT OF HOMELAND SECURITY; SCOTT BESSENT, Secretary of the Treasury, in his official capacity; U.S. DEPARTMENT OF THE TREASURY; HOWARD LUTNICK, Secretary of Commerce, in his official capacity; U.S. DEPARTMENT OF COMMERCE; PETE R. FLORES, Acting Commissioner of U.S. Customs & Border Protection, in his official capacity; U.S. CUSTOMS & BORDER PROTECTION; JAMIESON GREER, U.S. Trade Representative, in his official capacity; THE OFFICE OF THE U.S. TRADE REPRESENTATIVE, <br><br>         Defendants. | Civil Action No. 1:25-cv-01248 |

## DEFENDANTS' MOTION TO TRANSFER

Pursuant to 28 U.S.C. § 1631, defendants, through undersigned counsel, respectfully move this Court to transfer this action to the United States Court of International Trade. The discussion required by LCvR 7(m) occurred, and plaintiffs' counsel stated that plaintiffs oppose this motion. The grounds for this motion are contained in the accompanying memorandum of law.

DATED: April 24, 2025

OF COUNSEL:

ALEXANDER K. HAAS
Director

STEPHEN M. ELLIOTT
Assistant Director
U.S. Department of Justice
Civil Division
Federal Programs Branch

SOSUN BAE
Senior Trial Counsel
LUKE MATHERS
BLAKE W. COWMAN
COLLIN T. MATHIAS
Trial Attorneys
U.S. Department of Justice
Civil Division
Commercial Litigation Branch

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office
U.S. Department of Justice
26 Federal Plaza, Room 346
New York, NY 10278
(212) 264-9241
Justin.R.Miller@usdoj.gov
*Attorneys for Defendants*

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEARNING RESOURCES, INC., ) | |
| ) | |
| and ) | |
| ) | |
| HAND@MIND, INC., ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:25-cv-01248 |
| ) | |
| DONALD J. TRUMP, President of the United ) | |
| States, in his official capacity; KRISTI NOEM, ) | |
| Secretary of the U.S. Department of Homeland ) | |
| Security, in her official capacity; U.S. ) | |
| DEPARMENT OF HOMELAND SECURITY; ) | |
| SCOTT BESSENT, Secretary of the Treasury, ) | |
| in his official capacity; U.S. DEPARTMENT ) | |
| OF THE TREASURY; HOWARD LUTNICK, ) | |
| Secretary of Commerce, in his official capacity; ) | |
| U.S. DEPARTMENT OF COMMERCE; ) | |
| PETE R. FLORES, Acting Commissioner of ) | |
| U.S. Customs & Border Protection, in his official ) | |
| capacity; U.S. CUSTOMS & BORDER ) | |
| PROTECTION; JAMIESON GREER, ) | |
| U.S. Trade Representative, in his official capacity; ) | |
| THE OFFICE OF THE U.S. TRADE ) | |
| REPRESENTATIVE, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN**
**SUPPORT OF DEFENDANTS' MOTION TO TRANSFER**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 2

    I.    Legal Background ................................................................................................. 2

        A.    The International Emergency Economic Powers Act ..................................... 2

        B.    The National Emergencies Act ..................................................................... 3

    II.    Executive Orders Under IEEPA ........................................................................... 4

        A.    China Executive Orders ................................................................................ 4

        B.    Reciprocal Tariff Executive Orders ............................................................. 5

    III.    Plaintiffs' Suit ..................................................................................................... 7

STANDARD OF REVIEW ............................................................................................... 7

ARGUMENT .................................................................................................................... 8

    I.    Transfer is Required Because the Court of International Trade Has Exclusive Subject-Matter Jurisdiction Over Plaintiffs' Complaint .................................................... 8

CONCLUSION................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Alcan Sales, Div. of Alcan Aluminum Corp. v. United States*,
    693 F.2d 1089 (Fed. Cir. 1982) ................................................................. 11

*Arjay Associates, Inc. v. Bush*,
    891 F.2d 894 (Fed. Cir. 1989) ................................................................... 10

*Bos. Wool Trade Ass'n v. Snyder*,
    161 F.2d 648 (D.C. Cir. 1947) ................................................................... 12

*Commodities Export Co. v. U.S. Customs Serv.*,
    957 F.2d 223 (6th Cir. 1992) ..................................................................... 10

*\*Conoco, Inc. v. U.S. Foreign-Trade Zones Bd.*,
    18 F.3d 1581 (Fed. Cir. 1994) ..................................................................... 9

*\*Cornet Stores v. Morton*,
    632 F.2d 96 (9th Cir. 1980) ....................................................................... 11

*Corus Group PLC v. Int'l Trade Comm'n*,
    352 F.3d 1351 (Fed. Cir. 2003) ................................................................. 10

*Dames & Moore v. Regan*,
    453 U.S. 654 (1981) ................................................................................... 2

*Earth Island Inst. v. Christopher*,
    6 F.3d 648 (9th Cir. 1993) ......................................................................... 12

*Furniture Brands Int'l, Inc v. U.S. Int'l Trade Comm'n*,
    804 F. Supp. 2d 1 (D.D.C. 2011) ................................................................ 8

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990) ................................................................................... 7

*Henry Pollak, Inc. v. Blumenthal*,
    444 F. Supp. 56 (D.D.C. 1977) ................................................................. 11

*Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxites*,
    456 U.S. 694 (1982) ................................................................................... 7

*\*K-Mart Corp. v. Cartier, Inc.*,
    485 U.S. 176 (1988) ................................................................................... 9

*Kocher v. Fowler*,
    397 F.2d 641 (D.C. Cir. 1967) ................................................................... 12

*Kokkonen v. Guardian Life Ins. Co.*,
    511 U.S. 375 (1994) ............................................................................................ 7

*Maple Leaf Fish Co. v. United States*,
    762 F.2d 86 (Fed. Cir. 1985) ............................................................................ 11

*Miami Free Zone Corp. v. Foreign Trade Zones Bd.*,
    22 F.3d 1110 (D.C. Cir. 1994) .......................................................................... 12

*Motion Systems Corp. v. Bush*,
    437 F.3d 1356 (Fed. Cir. 2006) ........................................................................ 10

*Orleans Int'l, Inc. v. United States*,
    334 F.3d 1375 (Fed. Cir. 2003) .......................................................................... 9

*Pentax Corp. v. Myhra*,
    72 F.3d 708 (9th Cir. 1995) ............................................................................ 8, 9

*Regan v. Wald*,
    468 U.S. 222 (1984) ............................................................................................ 2

*Simon Design Inc. v. United States*,
    609 F.3d 1335 (Fed. Cir. 2010) ........................................................................ 10

*Solar Energy Indus. Assn. v. United States*,
    111 F.4th 1349 (Fed. Cir. 2024) ...................................................................... 10

*Totes-Isotoner Corp. v. United States*,
    594 F.3d 1346 (Fed. Cir. 2010) ........................................................................ 10

*Transpacific Steel LLC v. United States*,
    4 F.4th 1306 (Fed. Cir. 2021) .......................................................................... 10

*U.S. Shoe Corp. v. United States*,
    523 U.S. 360 (1998) .......................................................................................... 10

*United States v. Universal Fruits & Vegetables Corp.*,
    370 F.3d 829 (9th Cir. 2004) .............................................................................. 8

*United States v. Yoshida Int'l*,
    526 F.2d 560 (C.C.P.A. 1975) .......................................................................... 11

**Constitutional Provisions**

U.S. Const. art. 1, § 8, cl. 1 ...................................................................................... 9

**Statutes**

28 U.S.C. § 1331 ...................................................................................................... 9

28 U.S.C. § 1337 ........................................................................................................... 1

28 U.S.C. § 1337(c) ...................................................................................................... 9

28 U.S.C. § 1581(i) .................................................................................................. 1, 13

28 U.S.C. § 1581(i)(1)(A) ............................................................................................. 8

28 U.S.C. § 1581(i)(1)(B) ........................................................................................ 8, 11

28 U.S.C. § 1581(i)(1)(D) ........................................................................................ 9, 11

28 U.S.C. § 1631 ......................................................................................................... 13

50 U.S.C. § 1621(a) ...................................................................................................... 3

50 U.S.C. § 1622 .......................................................................................................... 4

50 U.S.C. § 1641 .......................................................................................................... 3

50 U.S.C. § 1662(d) ...................................................................................................... 4

50 U.S.C. § 1701(a) ...................................................................................................... 2

50 U.S.C. § 1702(a)(1)(B) ............................................................................................ 2

50 U.S.C. § 1702(b) ...................................................................................................... 2

Act of May 28, 1926, ch. 411, 44 Stat. 669 ............................................................... 10

Customs Administration Act of 1890, ch. 407, 26 Stat. 131 ...................................... 10

National Emergencies Act, Pub. L. No. 94-412, 90 Stat. 1255 (1976) ......................... 3

**Executive Orders and Implementing Notices**

*Amended Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's February 1, 2025 Executive Order Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,431 (Feb. 12, 2025) ...................................................................................... 5

Executive Order 14195 of February 1, 2025,
 *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*,  90 Fed. Reg. 9,121 (Feb. 7, 2025) ............................................................... 4

Executive Order 14228 of March 3, 2025,
 *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, Exec. Order 14,228, 90 Fed. Reg. 11,463 (Mar. 7, 2025) ........................... 5

Executive Order 14257 of April 2, 2025,
*Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025) ................................................................................................................. 5, 6

Executive Order 14259 of April 8, 2025,
*Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports From the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025) ...................................... 7

Executive Order 14266 of April 9, 2025,
*Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment* ....... 6

*Further Amended Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's Executive Order 14195, Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,426 (Mar. 6, 2025) .................................................................................................................. 5

*Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's February 1, 2025 Executive Order Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,038 (Feb. 5, 2025) .... 5

## Other Authorities

Nat'l Emergencies Act: Hr'gs Before the Subcomm. on Admin. Law and Governmental Relations, 94th Cong. (Mar. 6, 1975) ...................................................................................... 3

S. Rep. No. 94-922 (1976) ................................................................................................................. 3

S. Rep. No. 95-466 (1977) ................................................................................................................. 2

## <u>INTRODUCTION</u>

In the International Emergency Economic Powers Act of 1977 (IEEPA), Congress confirmed the President's power to, among other things, "regulate . . . importation" of foreign goods to deal with a national emergency. The President, acting under IEEPA, has regulated imports by imposing tariffs on Chinese and other countries' goods, through a series of Executive Orders, to deal with unusual and extraordinary threats to the United States's national security, foreign policy, and economy.

Plaintiffs challenge the President's authority to impose tariffs under IEEPA on both constitutional and statutory grounds. But all of plaintiffs' arguments concern the imposition of tariffs—over which the Court of International Trade has *exclusive* jurisdiction. 28 U.S.C. § 1581(i). And when the Court of International Trade has exclusive jurisdiction, this Court is divested of jurisdiction. 28 U.S.C. § 1337. Section 1631 of Title 28 of the U.S. Code requires transfer when there is "a want of jurisdiction" in the original court and when the action could have been brought in another court. Because the Court of International Trade has exclusive jurisdiction over the subject matter in plaintiffs' complaint, the case should be transferred to that court for any further proceedings, including any threshold challenges.

In fact, the Court of International Trade is currently exercising jurisdiction over three cases challenging tariffs issued under IEEPA. In one case, it has already denied an application for a temporary restraining order and ordered expedited briefing on a preliminary injunction and summary judgment. If this Court were to also exercise jurisdiction over the identical issues, it would violate the jurisdictional scheme Congress created and could potentially result in conflicting judgments, upending U.S. Customs and Border Protection's administration of the customs laws. The Court should promptly transfer the case.

1

## BACKGROUND

**I.      Legal Background**

**A.      The International Emergency Economic Powers Act**

In 1977, Congress enacted IEEPA.  *See* S. Rep. No. 95-466, at 1–2 (1977), *reprinted in*

1977 U.S.C.C.A.N. 4540, 4541.  When adopting IEEPA, Congress modified the existing Trading

with the Enemy Act (TWEA) so that it applied only in periods of war, but also extended the

President's authority to periods of declared national emergencies.  *See Regan v. Wald*, 468 U.S.

222, 227–28 (1984).  Although the broad powers granted to the President under IEEPA are

"essentially the same as" those under its predecessor TWEA, *id.*; *see Dames & Moore v. Regan*,

453 U.S. 654, 671–72 (1981) (IEEPA was "directly drawn" from the language of TWEA),

IEEPA provides authority to exercise those powers during peacetime, "to deal with any unusual

and extraordinary threat, which has its source in whole or substantial part outside the United

States, to the national security, foreign policy, or economy of the United States," 50 U.S.C.

§ 1701(a).  Once the President declares a national emergency relating to such a threat, IEEPA

empowers the President to "regulate . . . importation . . . with respect to any property, subject to

the jurisdiction of the United States."  *Id.* § 1702(a)(1)(B).  In full, the relevant subsection

authorizes the President to:

> [R]egulate, direct and compel, nullify, void, prevent or prohibit,
> any acquisition, holding, withholding, use, transfer, withdrawal,
> transportation, importation or exportation  of, or dealing in, or
> exercising any right, power, or privilege with respect to, or
> transactions involving, any property in which any foreign country
> or a national thereof has any interest . . . or with respect to any
> property, subject to the jurisdiction of the United States[.]

*Id.*  IEEPA also contains narrowly focused exceptions to this broad grant of authority, which,

among other things, state that the President may not regulate or prohibit "the importation from

any country . . . of any information or informational materials . . . ."  *Id.* § 1702(b)(1)–(4).  But

none of the exceptions involves the President's authority to impose tariffs to deal with a declared national emergency.

### B.    The National Emergencies Act

The National Emergencies Act, Pub. L. No. 94-412, 90 Stat. 1255 (1976) (codified as amended at 50 U.S.C. §§ 1601–51), was an effort by Congress to "establish procedural guidelines for the handling of future emergencies with provision for regular Congressional review." S. Rep. No. 94-922, at 1 (1976). The statute includes directives for Presidential declarations of national emergencies with respect to statutes "authorizing the exercise, during the period of a national emergency, of any special or extraordinary power . . . ." 50 U.S.C. § 1621(a). Congress did not place any conditions on the President's ability to declare a national emergency. Instead, Congress committed this determination to the President as "it would be wrong to try to circumscribe with words with what conditions a President might be confronted." Nat'l Emergencies Act: Hr'gs Before the Subcomm. on Admin. Law and Governmental Relations, 94th Cong. 27 (Mar. 6, 1975) (statement of Sen. Mathias); *see also id.* at 31 ("[W]e didn't attempt to define it specifically because we were afraid we would circumscribe the President's constitutional powers."); *id.* at 27 (statement of Sen. Church) (similar).

Recognizing that a declaration of an emergency was essentially a political question to be resolved by the political branches, Congress gave itself the exclusive oversight authority over a President's national emergency declaration. For instance, Congress directs that a declaration of a national emergency be "immediately . . . transmitted to the Congress and published in the Federal Register." 50 U.S.C. § 1621(a). Congress also directs the President to comply with congressional reporting requirements pertaining to that declaration. *Id.* § 1641(a)–(c). Congress may terminate a national emergency through a joint resolution that is subject to fast-track

3

procedures, and Congress is directed to meet "[n]ot later than six months after a national

emergency is declared, and [every six months thereafter]," to consider whether the emergency

shall be terminated. *Id.* § 1622(a)–(c). A declaration of a national emergency also "terminate[s]

on the anniversary of the declaration" unless the President provides notice to Congress that the

emergency "continue[s]." *Id.* § 1662(d).

## II. Executive Orders Under IEEPA

At issue in this case are two declared national emergencies and the President's actions to

deal with these emergencies.

### A. China Executive Orders

On February 1, 2025, the President took action under IEEPA to specifically address the

unusual and extraordinary threat from the People's Republic of China (PRC), including the

PRC's failures to stem the flow of contraband drugs to the United States. Executive Order 14195

of February 1, 2025, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the

People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025). The President found that the

PRC had failed "to arrest, seize, detain, or otherwise intercept chemical precursor suppliers,

money launderers, other [Transnational Criminal Organizations], criminals at large, and drugs."

*Id.* at 9,122. To address the national emergency, the President took "decisive and immediate

action" under IEEPA and "decided to impose, consistent with law, ad valorem tariffs on articles

that are products of the PRC as set forth in this order." *Id.*

The President then imposed a 10% *ad valorem* duty rate on most goods imported from

the PRC and authorized the U.S. Department of Homeland Security (DHS) to take any necessary

actions to implement the order. *Id.* at 9,122–23. DHS, through U.S. Customs and Border

Protection, did so shortly thereafter. *See Implementation of Additional Duties on Products of the

People's Republic of China Pursuant to the President's February 1, 2025 Executive Order*

*Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,038 (Feb. 5, 2025) (implementing the 10% duty through amendments to the Harmonized Tariff Schedule of the United States set out in an Annex to the Federal Register notice).  On March 3, 2025, the President amended the order to increase the amount of duty to 20%.  Executive Order 14228 of March 3, 2025, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025); *Further Amended Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's Executive Order 14195, Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,426 (Mar. 6, 2025) (implementing the 20% duty through amendments to the Harmonized Tariff Schedule of the United States set out in an Annex to the Federal Register notice).

    **B.**    **Reciprocal Tariff Executive Orders**

On April 2, 2025, the President declared a separate national emergency, finding "that underlying conditions, including a lack of reciprocity in our bilateral trade relationships, disparate tariff rates and non-tariff barriers, and U.S. trading partners' economic policies that suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits, constitute an unusual and extraordinary threat to the national security and economy of the United States."  Executive Order 14257 of April 2, 2025, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).  That threat, the President found, "has its source in whole or substantial part outside the United States in the domestic economic policies of key trading partners and structural imbalances in the global trading system."  *Id.*

5

In particular, these "large and persistent annual U.S. goods trade deficits" have "atroph[ied]" our nation's "domestic production capacity" to the point where, now, the United States' "military readiness" and "national security posture" are "comprise[d]"—an "especially acute" emergency given "the recent rise in armed conflicts abroad." *Id.* at 15,044–45. The Executive Order explains, for instance, that "because the United States has supplied so much military equipment to other countries, U.S. stockpiles of military goods are too low to be compatible with U.S. national defense interests." *Id.* at 15,043. Additionally, "[i]ncreased reliance on foreign producers for goods also has compromised U.S. economic security by rendering U.S. supply chains vulnerable to geo-political disruption and supply shocks." *Id.* (noting the existence of supply disruptions currently being caused by "Houthi rebels . . . attacking cargo ships in the Middle East"). "The future of American competitiveness depends on reversing" the hemorrhage of manufacturing and manufacturing jobs to create "the industrial base" the nation "needs for national security," as well as safeguarding the vitality of the nation's food and agriculture sectors. *Id.* at 15,044.

Again, using his broad powers under IEEPA, the President took action that he deemed necessary and appropriate to deal with this unusual and extraordinary threat to the United States's national security and economy, and imposed a 10% duty on most imported goods. *Id.* at 15,045. These duties took effect on April 5, 2025, with select countries having additional duties imposed on April 9. *Id.* Since the initial declaration, the President has twice taken additional actions that he deemed necessary and appropriate to address this national emergency, including raising the duty rate for Chinese products. Executive Order 14266 of April 9, 2025, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 15, 2025); Executive Order 14259 of April 8, 2025, *Amendment to Reciprocal*

*Tariffs and Updated Duties as Applied to Low-Value Imports From the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

III.    **Plaintiffs' Suit**

On April 22, 2025, plaintiffs, Learning Resources, Inc. and hand2mind, Inc., filed a complaint in this Court.  ECF No. 1.  Plaintiffs allege that they directly import from China and are harmed by the tariffs because they require "significant and costly changes to their businesses."  *Id.* ¶¶ 61-63.

Plaintiffs allege that the Executive Orders imposing tariffs on Chinese goods exceed the President's statutory authority, *id.* ¶ 73,  and "violate[] Article I of the Constitution and the separation of powers,"  *id.* ¶ 102.  They also allege that the named agencies' actions implementing the orders violates the Administrative Procedure Act.  *Id.* ¶ 99.  As a remedy, plaintiffs ask the Court to:  (1) "preliminarily and permanently enjoin[]" the agency defendants "from taking any action to collect any tariffs announced" in the Orders, *id.* at Prayer for Relief ¶ A; (2) "[d]eclare" the challenged Executive Orders "unlawful," *id.* at Prayer for Relief ¶ D; and (3) "declar[e] that, to the extent IEEPA authorizes the President unilaterally to impose tariffs," it is unconstitutional, *id.* at Prayer for Relief ¶ F.  Plaintiffs also seek fees and costs under the Equal Access to Justice Act.  *Id.* at Prayer for Relief ¶ I.

**STANDARD OF REVIEW**

Federal courts have an obligation to ensure in each case that their actions are "limited to those subjects encompassed within a statutory grant of jurisdiction."  *Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxites*, 456 U.S. 694, 701 (1982).  A plaintiff bears the burden to establish the subject-matter jurisdiction of the district court.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).  Under 28 U.S.C. § 1631, whenever a civil action is filed and a court finds "there is a want of jurisdiction,

7

the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action or appeal could have been brought at the time it was filed . . . ."

When courts are faced with conflicts between the broad grants of jurisdiction to the district courts and the grant of exclusive jurisdiction to the Court of International Trade, they should "resolve those conflicts by 'upholding the exclusivity of the Court of International Trade's jurisdiction.'" *United States v. Universal Fruits & Vegetables Corp.*, 370 F.3d 829, 836 (9th Cir. 2004) (cleaned up). Accordingly, when the Court of International Trade appears to have subject-matter jurisdiction over an action filed in district court, "the prudent thing to do is to . . . transfer the case to the [Court of International Trade,] so that [it] can determine the question of its own jurisdiction." *Pentax Corp. v. Myhra*, 72 F.3d 708, 711 (9th Cir. 1995); *see also Furniture Brands Int'l, Inc v. U.S. Int'l Trade Comm'n*, 804 F. Supp. 2d 1, 6–7 (D.D.C. 2011) (transferring a matter to the Court of International Trade because it "is the better forum" to decide its jurisdiction). Such transfer is accomplished through 28 U.S.C. § 1631.

## ARGUMENT

### I.    Transfer is Required Because the Court of International Trade Has Exclusive Subject-Matter Jurisdiction Over Plaintiffs' Complaint

This Court lacks jurisdiction to hear this case and should promptly transfer it to the Court of International Trade.

The Court of International Trade possesses "exclusive jurisdiction" over "any civil action commenced against" federal agencies or officers that "arises out of any law of the United States providing for . . . tariffs, duties, fees or other taxes on the importation of merchandise for reasons other than the raising of revenue" or under any law providing for "revenue from imports." 28 U.S.C. § 1581(i)(1)(A), (B). The Court of International Trade also has exclusive jurisdiction over any civil action arising out of any law "providing for . . . administration and enforcement

with respect to the matters referred to in" any preceding provision of § 1581(i)(1).  *Id.* § 1581(i)(1)(D).  To emphasize that the district courts lack concurrent jurisdiction over these specialized subject matters, Congress separately provided that "[t]he district courts shall not have jurisdiction under this section of any matter within the exclusive jurisdiction of the Court of International Trade . . . ."  *Id.* § 1337(c).

The Supreme Court has confirmed that these statutes mean exactly what they say.  When one of the "grants of exclusive jurisdiction to the Court of International Trade" applies, all other district courts are "divested of jurisdiction" over the action.  *K-Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 182–83 (1988).  Other courts similarly agree that "section 1581(i) removes specific actions from the general federal-question jurisdiction of the district courts (under 28 U.S.C. § 1331) and places them in the jurisdiction of the Court of International Trade."  *Orleans Int'l, Inc. v. United States*, 334 F.3d 1375, 1378 (Fed. Cir. 2003); *see also Conoco, Inc. v. U.S. Foreign-Trade Zones Bd.*, 18 F.3d 1581, 1586 (Fed. Cir. 1994); *Pentax Corp.*, 72 F.3d at 711. Thus, where Congress has provided that the Court of International Trade is the exclusive forum for challenges to tariffs imposed on imported merchandise, the district courts have no power to act.

The Court of International Trade's exclusive jurisdiction over tariff cases serves an important function:  it consolidates this area of law "in one place . . . with an already developed expertise in international trade and tariff matters," thus ensuring a "degree of uniformity and consistency."  *Conoco*, 18 F.3d at 1586.  Consolidating tariff matters in a single jurisdiction protects the constitutional requirement that "[a]ll Duties, Imposts, and Excises shall be uniform throughout the United States."  U.S. Const. art. 1, § 8, cl. 1.  If tariff challenges like those raised by plaintiffs could be brought in any (or every) district court, there would be a risk of

inconsistent results and different tariffs imposed in different regions of the country, in direct conflict with Congress' statutory design.  Indeed, Congress has consistently placed judicial review of tariff matters in a single forum, beginning with the Board of Appraisers in 1890, *see* Customs Administration Act of 1890, ch. 407, 26 Stat. 131; then the Customs Court in 1926, *see* Act of May 28, 1926, ch. 411, 44 Stat. 669; and finally today's Court of International Trade.

Reflecting the exclusive jurisdiction statutes and their underlying purposes of ensuring uniformity, the Court of International Trade's exclusive jurisdiction is broad and encompasses constitutional challenges to tariffs, duties, exactions, and embargoes.  *See*, *e.g.*, *U.S. Shoe Corp. v. United States,* 523 U.S. 360 (1998) (constitutional challenge to Harbor Maintenance Fee); *Totes-Isotoner Corp. v. United States*, 594 F.3d 1346, 1350–51 (Fed. Cir. 2010) (constitutional challenge to Tariff Schedules of the United States); *cf. Arjay Associates, Inc. v. Bush*, 891 F.2d 894 (Fed. Cir. 1989) (constitutional challenge to embargo on imports from certain Japanese companies); *see also Commodities Export Co. v. U.S. Customs Serv.*, 957 F.2d 223, 229–30 (6th Cir. 1992).

Its exclusive jurisdiction also includes challenges to Presidential proclamations imposing duties and tariffs.  *See, e.g.*, *Transpacific Steel LLC v. United States*, 4 F.4th 1306 (Fed. Cir. 2021) (Presidential proclamation imposing tariffs on steel under Section 232 of the Trade Expansion Act of 1962); *Solar Energy Indus. Assn. v. United States*, 111 F.4th 1349, 1351 (Fed. Cir. 2024) (Presidential proclamation imposing tariffs on solar panels pursuant to Section 201 of Trade Act of 1974); *Simon Design Inc. v. United States*, 609 F.3d 1335 (Fed. Cir. 2010) (Presidential proclamation modifying tariff schedules); *Motion Systems Corp. v. Bush*, 437 F.3d 1356 (Fed. Cir. 2006) (en banc) (Presidential proclamation declining to impose China-specific safeguard tariff); *Corus Group PLC v. Int'l Trade Comm'n*, 352 F.3d 1351 (Fed. Cir. 2003)

(Presidential proclamation imposing duties on certain steel products, based on Section 201); *Maple Leaf Fish Co. v. United States*, 762 F.2d 86 (Fed. Cir. 1985) (Presidential proclamation imposing duties on mushrooms based on Section 201); *N. Am. Foreign Trading Corp. v. United States*, 600 F. Supp. 226, 230 (Ct. Int'l Trade 1984) (upholding validity of Executive Order causing plaintiff's goods to be classified under provision of the Tariff Schedules of the United States).

Here, plaintiffs challenge the President's authority to impose tariffs under IEEPA and challenges agencies' administration of those tariffs. These questions, including all threshold questions, fall squarely within the exclusive subject-matter jurisdiction of the Court of International Trade because they arise out of laws providing for tariffs or the administration or enforcement of those laws. 28 U.S.C. § 1581(i)(1)(B), (D). This Court thus lacks jurisdiction over the case and should transfer it to the Court of International Trade. The Court of Customs and Patent Appeals—the Federal Circuit's predecessor that heard all appeals from the Customs Court—also adjudicated a materially similar matter under IEEPA's predecessor statute (TWEA) brought in the right forum. *See, e.g.*, *United States v. Yoshida Int'l*, 526 F.2d 560 (C.C.P.A. 1975); *accord Alcan Sales, Div. of Alcan Aluminum Corp. v. United States*, 693 F.2d 1089 (Fed. Cir. 1982). Other courts have likewise concluded that the specialized trade court had exclusive jurisdiction to determine whether IEEPA's predecessor authorized tariffs. *See, e.g.*, *Cornet Stores v. Morton*, 632 F.2d 96, 99–100 (9th Cir. 1980) (affirming district court's decision that claim seeking recovery of duties paid pursuant to order authorized under TWEA fell within exclusive jurisdiction of the Customs Court); *Henry Pollak, Inc. v. Blumenthal*, 444 F. Supp. 56 (D.D.C.), *aff'd*, 593 F.2d 1371 (D.C. Cir. 1977). That these courts got it wrong is especially doubtful because Congress later *expanded* the scope of the Court of International Trade's

11

jurisdiction when adopting § 1581(i).  *See Earth Island Inst. v. Christopher*, 6 F.3d 648, 651 (9th

Cir. 1993) ("Section 1581(i) of the 1980 Act also expanded the jurisdiction of the CIT beyond

that of the earlier Customs Court.").  In any event, even before the existence of § 1581(i), the

D.C. Circuit stated that "only in the [trade court] may an importer seek relief from a levy of

duties on his importations.  That court's jurisdiction is not ousted by [a plaintiff's] effort to draw

the statute into controversy, or by his presentation of constitutional issues for resolution."

*Kocher v. Fowler*, 397 F.2d 641, 642–43 (D.C. Cir. 1967); *see Bos. Wool Trade Ass'n v. Snyder*,

161 F.2d 648, 649 (D.C. Cir. 1947) ("It is clear that the controversy concerns the duty to be

imposed upon certain imports.  As such, it is within the exclusive jurisdiction of the Court of

Customs and Patent Appeals."); *see also Miami Free Zone Corp. v. Foreign Trade Zones Bd.*, 22

F.3d 1110, 1112 (D.C. Cir. 1994) (after the creation of § 1581, deferring to the Federal Circuit's

determination of the Court of International Trade's jurisdiction).

     In fact, the Court of International Trade is currently considering three similar challenges

to the President's authority under IEEPA.  *Barnes v. United States*, No. 25-0043, ECF No. 3

(Compl.); *V.O.S. Selections Inc. v. Trump*, No. 25-00066, ECF No. 2 (Compl.); *Oregon v.

Trump*, No. 25-00077, ECF No. 2 (Compl.).  In all three cases, the plaintiffs, like plaintiffs here,

claim that the President was not authorized to impose tariffs under IEEPA.  In *V.O.S.*, after full

briefing on plaintiffs' motion for a temporary restraining order, the Court of International Trade

denied the TRO and ordered preliminary injunction and summary judgment briefing, indicating

that it is exercising jurisdiction.  *See V.O.S.*, ECF No. 13.  And while the United States has asked

the court to dismiss the complaint in *Barnes* for lack of standing because Mr. Barnes has not

established harm, for the reasons stated above, the consideration of whether to dismiss belongs

exclusively to the Court of International Trade.  *See Barnes*, ECF No. 9.  Because the Court of

International Trade's jurisdiction over tariff cases is exclusive, this Court's retention of this case would require the conclusion that the Court of International Trade has erred in exercising jurisdiction over the three challenges it is considering. *See Furniture Brands Inter.,* 804 F. Supp. 2d at 6 ("[The Court of International Trade] is the court that is far better-positioned to decide this jurisdictional issue.").

Moreover, over the last several years, the Court of International Trade has entertained thousands of challenges to various Presidential actions imposing tariffs. *See, e.g.*, *HMTX Indus. v. United States*, No. 20-00177 (Ct. Int'l Trade); appeal filed, No. 23-1891, ECF No. 5 (Fed. Cir. May 25, 2023) (identifying the 4,100 similar cases stayed pending resolution of the appeal). Likewise, the Court of International Trade routinely exercises jurisdiction under 28 U.S.C. § 1581(i) to review agency determinations under the Administrative Procedure Act. *See, e.g.*, *Sea Shepherd New Zealand v. United States*, No. 20-00112 (Ct. Int'l Trade); *Maui and Hector's Dolphin Defenders NZ Inc. v. Nat'l Marine Fisheries Svc.*, No. 24-00218 (Ct. Int'l Trade). This complaint should be treated no differently.

Because only the Court of International Trade has jurisdiction to hear this dispute regarding the imposition of tariffs, this Court lacks jurisdiction, so it is in the interests of justice to promptly transfer this action to the Court of International Trade. 28 U.S.C. § 1631.

## **CONCLUSION**

For these reasons, defendants respectfully request that the Court transfer this action in its

entirety to the Court of International Trade.

DATED: April 24, 2025                    Respectfully submitted,

OF COUNSEL:                              YAAKOV M. ROTH
                                         Acting Assistant Attorney General
ALEXANDER K. HAAS
Director                                 ERIC J. HAMILTON
                                         Deputy Assistant Attorney General
STEPHEN M. ELLIOTT
Assistant Director                       PATRICIA M. McCARTHY
U.S. Department of Justice               Director
Civil Division
Federal Programs Branch                  /s/ Claudia Burke
                                         CLAUDIA BURKE
SOSUN BAE                                Deputy Director
Senior Trial Counsel
LUKE MATHERS                             /s/ Justin R. Miller
BLAKE W. COWMAN                          JUSTIN R. MILLER
COLLIN T. MATHIAS                        Attorney-In-Charge
Trial Attorneys                          International Trade Field Office
U.S. Department of Justice               U.S. Department of Justice
Civil Division                           26 Federal Plaza, Room 346
Commercial Litigation Branch             New York, NY 10278
                                         (212) 264-9241
                                         Justin.R.Miller@usdoj.gov
                                         *Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEARNING RESOURCES, INC., )<br><br>and )<br><br>HAND2MIND, INC., )<br><br><br>       Plaintiffs, )<br><br>     v. )<br><br>DONALD J. TRUMP, President of the United )<br>States, in his official capacity; KRISTI NOEM, )<br>Secretary of the U.S. Department of Homeland )<br>Security, in her official capacity; U.S. )<br>DEPARMENT OF HOMELAND SECURITY; )<br>SCOTT BESSENT, Secretary of the Treasury, )<br>in his official capacity; U.S. DEPARTMENT )<br>OF THE TREASURY; HOWARD LUTNICK, )<br>Secretary of Commerce, in his official capacity; )<br>U.S. DEPARTMENT OF COMMERCE; )<br>PETE R. FLORES, Acting Commissioner of )<br>U.S. Customs & Border Protection, in his official )<br>capacity; U.S. CUSTOMS & BORDER )<br>PROTECTION; JAMIESON GREER, )<br>U.S. Trade Representative, in his official capacity; )<br>THE OFFICE OF THE U.S. TRADE )<br>REPRESENTATIVE, )<br><br>       Defendants. ) | Civil Action No. 1:25-cv-01248 |

**[Proposed] ORDER**

Upon consideration of Defendants' Motion to Transfer and the other papers submitted, it

is hereby ORDERED that Defendants' Motion is GRANTED.  Pursuant to 28 U.S.C. § 1631,

this matter is ordered TRANSFERRED to the U.S. Court of International Trade.

IT IS SO ORDERED.

Dated: _____

                                    _____
                                      UNITED STATES DISTRICT JUDGE

### NAMES OF PERSONS TO BE SERVED WITH PROPOSED ORDERS

- James Edward Tusse, jtysse@akingump.com

- Justin R. Miller, Justin.R.Miller@usdoj.gov

- Kristen Loveland, kloveland@akingump.com

- Pratik Shah, pshah@akingump.com