UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEARNING RESOURCES, INC., and HAND2MIND, INC.,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, President of the United States, in his official capacity; KRISTI NOEM, Secretary of the Department of Homeland Security, in her official capacity; U.S. DEPARTMENT OF HOMELAND SECURITY; SCOTT BESSENT, Secretary of the Treasury, in his official capacity; U.S. DEPARTMENT OF TREASURY; HOWARD LUTNICK, Secretary of Commerce, in his official capacity; UNITED STATES DEPARTMENT OF COMMERCE; PETE R. FLORES, Acting Commissioner of Customs & Border Protection, in his official capacity; U.S. CUSTOMS & BORDER PROTECTION; JAMIESON GREER, U.S. Trade Representative, in his official capacity; and THE OFFICE OF THE U.S. TRADE REPRESENTATIVE,<br><br>*Defendants*. | Civ. Action No. 25-cv-01248-RC |

**PLAINTIFFS' RESPONSE TO MOTION TO TRANSFER**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT ..........................................................................................................................2

THIS COURT, NOT THE CIT, SHOULD EXERCISE JURISDICTION OVER THIS CASE ....................................................................................................................................2

    I.    Plaintiffs' Action Does Not Arise From A "Law \*\*\* Providing For Tariffs" ..........2

    II.    Jurisdictional Principles And Policy Considerations Favor Denying Transfer ......................................................................................................................6

        A.    This Court Must Resolve The Jurisdictional Issue For Itself......................6

        B.    Considerations Of Uniformity And Expertise Weigh In Favor Of This Court's Jurisdiction, Not The CIT's......................................................8

    III.    If The Court Concludes It Lacks Jurisdiction, It Should Dismiss Rather Than Transfer ..........................................................................................................11

CONCLUSION.....................................................................................................................12

i

## TABLE OF AUTHORITIES

**CASES:**

*Alcan Sales, Div. of Alcan Aluminum Corp. v. United States*,
   528 F. Supp. 1159 (Ct. Int'l Trade 1981) ................................................................................5
   693 F.2d 1089 (Fed. Cir. 1982)................................................................................................5

*Arizona Christian Sch. Tuition Org. v. Winn*,
   563 U.S. 125 (2011)..................................................................................................................8

*Boston Wool Trade Ass'n v. Snyder*,
   161 F.2d 648 (D.C. Cir. 1947)..................................................................................................5

*Brownback v. King*,
   592 U.S. 209 (2021)..................................................................................................................6

*Coalition to Preserve the Integrity of Am. Trademarks v. United States*,
   790 F.2d 903 (D.C. Cir. 1986)..................................................................................................7

*Cornet Stores v. Morton*,
   632 F.2d 96 (9th Cir. 1980) ......................................................................................................5

*Dames & Moore v. Regan*,
   453 U.S. 654 (1981)................................................................................................................10

*Fulmen Co. v. Office of Foreign Assets Control*,
   547 F. Supp. 3d 13 (D.D.C. 2020)..........................................................................................11

*Furniture Brands Int'l, Inc v. U.S. Int'l Trade Comm'n*,
   804 F. Supp. 2d 1 (D.D.C. 2011)..............................................................................................7

*Henry Pollak, Inc. v. Blumenthal*,
   444 F. Supp. 56 (D.D.C. 1977)................................................................................................5

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
   333 F.3d 156 (D.C. Cir. 2003)................................................................................................11

*Horizon Lines, LLC. v. United States*,
   414 F. Supp. 2d 46 (D.D.C. 2006) ...........................................................................................1

*Hose v. INS*,
   180 F.3d 992 (9th Cir. 1999) ....................................................................................................7

*ICCS USA Corp. v. United States*,
   952 F.3d 1325 (Fed. Cir. 2020)..............................................................................................10

*Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l Bank*,
   659 F.2d 234 (D.C. Cir. 1981) ..................................................................................................6

*Inspired Ventures, LLC v. United States*,
   739 F. Supp. 3d 1343 (Ct. Int'l Trade 2024) ..........................................................................10

*K Mart Corp. v. Cartier, Inc.*,
   485 U.S. 176 (1988) ............................................................................................................3, 8

*Kocher v. Fowler*,
   397 F.2d 641 (D.C. Cir. 1967) ................................................................................................5

*Marmen Inc. v. United States*,
   No. 23-1877, 2025 WL 1162798 (Fed. Cir. Apr. 22, 2025) ....................................................8

*Miami Free Zone Corp. v. Foreign Trade Zones Bd.*,
   22 F.3d 1110 (D.C. Cir. 1994) ............................................................................................3, 7

*OKKO Bus. PE v. Lew*,
   133 F. Supp. 3d 17 (D.D.C. 2015) ........................................................................................11

*Pentax Corp. v. Myhra*,
   72 F.3d 708 (9th Cir. 1995) ...........................................................................................2, 4, 7

*Schindler Elevator Corp. v. Washington Metro. Area Transit Auth.*,
   16 F.4th 294 (D.C. Cir. 2021) .................................................................................................8

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ................................................................................................................6

*TikTok Inc. v. Garland*,
   122 F.4th 930 (D.C. Cir. 2024) .............................................................................................10
   145 S. Ct. 57 (2025) ..............................................................................................................10

*TikTok Inc. v. Trump*,
   507 F. Supp. 3d 92 (D.D.C. 2020) ........................................................................................11

*United States v. Haggar Apparel Co.*,
   526 U.S. 380 (1999) ................................................................................................................8

*United States v. Three Sums Totaling $612,168.23 in Seized U.S. Currency*,
   55 F.4th 932 (D.C. Cir. 2022) .................................................................................................9

*United States v. Yoshida Int'l*,
   526 F.2d 560 (C.C.P.A. 1975) ............................................................................................4, 5

*Van Loon v. Department of the Treasury*,
   122 F.4th 549 (5th Cir. 2024) ...............................................................................................10

*Webber v. United States Dep't of Homeland Sec.*,
   No. CV 25-26-GF-DLC, 2025 WL 1207587 (D. Mont. Apr. 25, 2025) ................................. 5

*Williams Gas Processing—Gulf Coast Co. v. F.E.R.C.*,
   331 F.3d 1011 (D.C. Cir. 2003) ........................................................................................... 6

*Zukerman v. United States Postal Serv.*,
   961 F.3d 431 (D.C. Cir. 2020) ......................................................................................... 6, 7

**STATUTES:**

19 U.S.C.
   § 1304(f) ........................................................................................................................ 2, 4, 7

28 U.S.C.
   § 1331 ..................................................................................................................................... 3
   § 1346 ..................................................................................................................................... 3
   § 1581(a) ................................................................................................................................ 5
   § 1581(i) ......................................................................................................................... *passim*
   § 1581(i)(1) ............................................................................................................................ 1
   § 1581(i)(1)(A) ...................................................................................................................... 3
   § 1581(i)(1)(B) .................................................................................................................. 2, 3
   § 1581(i)(1)(D) ...................................................................................................................... 3
   § 1582 .................................................................................................................................... 9
   § 1582(a) (1976) .................................................................................................................... 5
   § 1631 .................................................................................................................................. 11

50 U.S.C.
   § 1701 .................................................................................................................................. 10
   § 1702 .................................................................................................................................. 10
   § 1705(a) ............................................................................................................................... 9
   § 1705(b) ............................................................................................................................... 9
   § 1705(c) ............................................................................................................................... 9

**OTHER AUTHORITIES:**

H. R. 6394, 96th Cong. § 201(a) (2d Sess. 1980) ........................................................................ 4

## INTRODUCTION

In the five decades between the enactment of the International Emergency Economic Powers Act ("IEEPA") in 1977 and the executive orders challenged in this litigation, the U.S. Court of International Trade ("CIT") heard exactly *zero* cases arising out of IEEPA. Meanwhile, cases challenging IEEPA actions in federal district courts are legion. Defendants offer no textual basis—and no compelling reason otherwise—to depart from that longstanding judicial practice of adjudicating IEEPA challenges in federal district court rather than in the CIT, "a specialized court of limited jurisdiction." *Horizon Lines, LLC. v. United States*, 414 F. Supp. 2d 46, 52 (D.D.C. 2006).

Defendants' argument for "exclusive" CIT jurisdiction fails to engage with the plain text of the CIT's jurisdictional statute, which requires that this action "arise[] out of any law of the United States providing for *** tariffs." 28 U.S.C. § 1581(i)(1). But whether IEEPA is such a law—*i.e.*, whether IEEPA in fact authorizes (or "provid[es] for") tariffs—is also the principal merits question Plaintiffs have raised before the Court in their concurrently pending motion for a preliminary injunction. Because this case undisputedly arises under IEEPA, and because IEEPA is *not* a statute "providing for" tariffs, this case does not fall within the CIT's exclusive jurisdiction. In fact, until the suits challenging the executive orders at issue, the federal government has *never* sought to transfer an IEEPA case to the CIT. For good reason: accepting Defendants' arguments would lead to arbitrary jurisdictional rules, conflicting precedents, and a startling expansion of the CIT's exclusive jurisdiction over matters for which it has no expertise.

The Court should deny Defendants' Transfer Motion.

1

# ARGUMENT[1]

## THIS COURT, NOT THE CIT, SHOULD EXERCISE JURISDICTION OVER THIS CASE

### I. Plaintiffs' Action Does Not Arise From A "Law *** Providing For Tariffs"

Whether this case falls within the CIT's exclusive jurisdiction turns on the language of the CIT's jurisdictional statute. That statute provides that the CIT "shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for," in relevant part, "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B). Thus, if an "action arises under" "a law providing for a duty," jurisdiction "lies exclusively in the CIT." *Pentax Corp. v. Myhra*, 72 F.3d 708, 710-11 (9th Cir. 1995) (holding that 19 U.S.C. § 1304(f) is such a law). Because this action is commenced against agencies and officers of the United States and arises out of IEEPA, the jurisdictional question boils down to whether IEEPA is a law "providing for *** tariffs."

That question, however, is the same one raised in Plaintiffs' pending motion for a preliminary injunction, *i.e.*, whether IEEPA "authorize[s] the President to impose tariffs." Mot. for Prelim. Inj. 17, ECF No. 9 (emphasis omitted) ("PI Mot."). As fully explained in that motion, as well as in Plaintiffs' reply in support of that motion, ECF No. 17 (both of which Plaintiffs hereby incorporate by reference), IEEPA's text, context, and historical practice all confirm the conclusion that IEEPA does *not* authorize the imposition of tariffs. Constitutional principles, including the "major questions" and non-delegation doctrines, confirm what the other tools of statutory

---

[1] Because the factual background is set forth in Plaintiffs' parallel preliminary injunction briefing, PI Mot. 4-15, this response does not repeat it here.

2

construction make clear.  This Court thus should exercise jurisdiction under 28 U.S.C. §§ 1331 and 1346 to decide Plaintiffs' principal claim, as this is a civil action arising under federal law that does not fall within the CIT's exclusive jurisdiction.

Defendants take the opposite view that IEEPA *does* provide for tariffs.  *See* Transfer Mot. 8-9, ECF No. 8 (quoting 28 U.S.C. § 1581(i)(1)(B)); *see also id.* (arguing that this case additionally involves a law providing for "revenue from imports" or "administration and enforcement" of tariffs under 28 U.S.C. § 1581(i)(1)(A) or (D)).  But Defendants' argument just begs the ultimate merits question.  Because IEEPA does *not* authorize the President to impose tariffs, the action necessarily does not "arise[] out of any law" "providing for *** tariffs" or import revenue.  *See Miami Free Zone Corp. v. Foreign Trade Zones Bd.*, 22 F.3d 1110, 1112 (D.C. Cir. 1994) (holding that "section 1581(i) grants the CIT exclusive jurisdiction over actions arising from laws *providing for*—not 'designed to deal with' or 'relating to'—revenue from imports").  The CIT thus lacks jurisdiction, let alone exclusive jurisdiction, over this IEEPA case.

Despite arguing that the jurisdictional "statutes mean exactly what they say," Transfer Mot. 9, Defendants spend surprisingly little time analyzing the text.  Instead, they appear to contend that it is sufficient for this case to involve "tariffs" as a general matter.  *See, e.g.*, *id.* at 1 (CIT has "*exclusive* jurisdiction" over "the imposition of tariffs" (emphasis added)); *id.* at 9 (CIT is "exclusive forum for challenges to tariffs"); *id.* at 10 ("Congress has consistently placed judicial review of tariff matters in a single forum.").  But under Section 1581(i)'s plain text, Defendants are required to show more:  that IEEPA—the "law of the United States" under which this action arises—itself "provid[es] for" tariffs or the "administration" of tariffs.  *Miami Free Zone Corp.*, 22 F.3d at 1112; *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 188 (1988) ("Congress did not commit

3

to the Court of International Trade's exclusive jurisdiction *every* suit against the Government challenging customs-related laws and regulations.").[2]

It is true, as Defendants point out, that the CIT regularly hears cases challenging presidential or agency action arising out of the nation's various trade laws. *See* Transfer Mot. 10-11. But those examples confirm Plaintiffs' point: each of those laws—located in Title 19 ("Customs Duties")—indisputably "provid[es] for" tariffs and duties. *E.g., Pentax Corp.*, 72 F.3d at 710-11 (citing 19 U.S.C. § 1304(f)). By contrast, IEEPA—which is located not in Title 19 but rather in Title 50 ("War and National Defense")—does not.

Defendants also note that one case decided under the Trading with the Enemy Act ("TWEA") was heard in the U.S. Customs Court and that other courts suggested that forum in two other TWEA cases. Transfer Mot. 11. But those decades-old cases were decided under the (bygone) U.S. Customs Court's jurisdictional statute, which was substantially amended upon the establishment of the CIT. In particular, *United States v. Yoshida International*, 526 F.2d 560

---

[2] Notably, an earlier congressional proposal would have granted the CIT jurisdiction over tariffs-related actions generally, by providing jurisdiction over a civil action that

(1) arises directly from an import transaction; and
(2)(A) involves the Tariff Act of 1930, the Trade Expansion Act of 1962, the Trade Act of 1974, or the Trade Agreements Act of 1979; or
  (B)   involves a provision of—
     (i)   the Constitution of the United States;
     (ii)  a treaty of the United States;
     (iii) an executive agreement executed by the President; or
     (iv)  an Executive order of the President,
which directly and substantially involves international trade.

H. R. 6394, 96th Cong. § 201(a) (2d Sess. 1980). In other words, Congress explicitly considered—but rejected—language that would have granted the CIT jurisdiction over an action that merely "involves a provision" of a law or executive order that "involves international trade."

4

(C.C.P.A. 1975), *Henry Pollak, Inc. v. Blumenthal*, 444 F. Supp. 56 (D.D.C. 1977), and *Cornet Stores v. Morton*, 632 F.2d 96 (9th Cir. 1980), were all resolved under a (since-amended) version of 28 U.S.C. § 1582 that was nothing like Section 1581(i) today. *See* 28 U.S.C. § 1582(a) (1976) ("The Customs Court shall have exclusive jurisdiction of civil actions instituted by any person whose protest pursuant to the Tariff Act of 1930, as amended, has been denied, in whole or in part, by the appropriate customs officer," in enumerated circumstances).[3] None of these inapposite examples sheds light on the jurisdictional question now before the Court: whether IEEPA is a law "providing for *** tariffs."

Finally, the fact that the District Court for the District of Montana recently issued an order transferring an IEEPA tariff challenge to the CIT does not change the analysis. Like Defendants, the court in that case relied primarily on *Yoshida* and *Cornet Stores*, which, as just noted, involved an entirely different jurisdictional statute. *Webber v. United States Dep't of Homeland Sec.*, No. CV 25-26-GF-DLC, 2025 WL 1207587, at *5-6 (D. Mont. Apr. 25, 2025). *Webber* also observed that a couple of cases challenging tariffs imposed under IEEPA (all filed within the last month) are currently pending in the CIT. *Id.* But three similar IEEPA tariff challenges are pending in federal district courts across the country, including in the Northern District of Florida (*Emily Ley Paper Inc. v. Trump*, No. 3:25-cv-00464 (N.D. Fla.))[4] and the Northern District of California (*State of

---

[3] Similarly, the jurisdictional basis for *Alcan Sales, Division of Alcan Aluminum Corporation v. United States*, 693 F.2d 1089 (Fed. Cir. 1982), was 28 U.S.C. § 1581(*a*), not (i). *See Alcan Sales, Div. of Alcan Aluminum Corp. v. United States*, 528 F. Supp. 1159, 1161 (Ct. Int'l Trade 1981). And both *Kocher v. Fowler*, 397 F.2d 641 (D.C. Cir. 1967), and *Boston Wool Trade Association v. Snyder*, 161 F.2d 648 (D.C. Cir. 1947), also arose, as Defendants admit, "before the existence of § 1581(i)," Transfer Mot. 12, and therefore shed no light on its interpretation.

[4] The Florida plaintiffs have also opposed transfer to the CIT. Plfs.' Opp'n to Defs.' Mot. to Transfer and Unopposed Mot. to Expedite (May 5, 2025), ECF No. 21.

5

*California v. Trump*, No. 3:25-cv-03372 (N.D. Cal.)).[5]  In any event, as explained below, there is no basis for this Court to abdicate its own jurisdictional inquiry to the CIT (which has never pronounced on its own jurisdiction in an IEEPA case).

In short, because IEEPA is not a statute providing for tariffs (for the reasons fully explained in Plaintiffs' preliminary injunction briefing), the Transfer Motion should be denied.

## II.     Jurisdictional Principles And Policy Considerations Favor Denying Transfer

Defendants' remaining jurisdictional and policy arguments, divorced from Section 1581(i)'s controlling text, cannot support transfer.  In fact, each consideration favors Plaintiffs.

### A.     This Court Must Resolve The Jurisdictional Issue For Itself

"[A] federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Zukerman v. United States Postal Serv.*, 961 F.3d 431, 445 (D.C. Cir. 2020) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014)).  Courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Id.* (citation omitted).  The Court "always ha[s] jurisdiction to determine [its] jurisdiction." *Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l Bank*, 659 F.2d 234, 239 (D.C. Cir. 1981).  And when the merits and jurisdiction are intertwined, the Court "can decide all of the merits issues in resolving a jurisdiction question, or vice versa." *Brownback v. King*, 592 U.S. 209, 217 (2021) (internal quotation marks, ellipsis, and citation omitted); *see also, e.g.*, *Williams Gas Processing—Gulf Coast Co. v. F.E.R.C.*, 331 F.3d 1011, 1017 (D.C. Cir. 2003).

Defendants counter that "when the Court of International Trade appears to have subject-matter jurisdiction over an action filed in district court, 'the prudent thing to do is to * * * transfer

---

[5] The California plaintiffs have also opposed transfer to the CIT.  Plfs.' Opp'n to Defs.' Mot. to Transfer to the U.S. Court of Int'l Trade (May 1, 2025), ECF No. 12.

the case to the [CIT], so that [it] can determine the question of its own jurisdiction.'" Transfer Mot. 8 (ellipsis and second alteration in original) (quoting *Pentax Corp.*, 72 F.3d at 711). But "[i]f the transferee court lacks jurisdiction, the transfer is obviously improper." *Hose v. INS*, 180 F.3d 992, 995-96 (9th Cir. 1999) (en banc). This Court thus must determine both its own jurisdiction and that of the transferee court before any transfer. *Id.* In any event, under binding precedent, it is "err[or]" for a district court to rely on "practical considerations" in declining to exercise otherwise available jurisdiction. *Zukerman*, 961 F.3d at 445. The government's plea for "pruden[ce]" should be rejected.

Regardless, none of Defendants' cases supports the cited proposition. The "question of [the CIT's] jurisdiction" in *Pentax* was not whether jurisdiction lies within the CIT (it plainly did, as that "action ar[ose] under 19 U.S.C. § 1304(f), which is a law providing for a duty"). 72 F.3d at 710-11. Rather, the jurisdictional question was "whether the current posture of the action supports judicial review under the Administrative Procedure[] Act" and the possibility that the plaintiff's claim might be barred by the statute of limitations. *Id.* The decision in *Furniture Brands International, Incorporated v. U.S. International Trade Commission*, 804 F. Supp. 2d 1 (D.D.C. 2011), involved an application of the "first-to-file" rule (in a case where the same plaintiff filed actions in the CIT and then in the DDC). *Id.* at 3-4. And *Miami Free Zone Corporation v. Foreign Trade Zones Board*, 22 F.3d 1110, 1112 (D.C. Cir. 1994), did not blindly "defer[] to the Federal Circuit's determination of the Court of International Trade's jurisdiction," Transfer Mot. 12, but rather carefully evaluated the jurisdictional provisions in view of the Federal Circuit's recent decision. 22 F.3d at 1112-13. Proving the point, the D.C. Circuit has elsewhere expressly disagreed with the Federal Circuit's jurisdictional analysis. *See Coalition to Preserve the Integrity of Am. Trademarks v. United States*, 790 F.2d 903, 905-07 (D.C. Cir. 1986) (concluding that action

belonged in district court, even though Federal Circuit concluded that action fell within CIT's jurisdiction under 28 U.S.C. § 1581(i)), *aff'd in part sub nom. K Mart Corp.*, 485 U.S. at 191. Of course, the Federal Circuit has never opined on the CIT's jurisdiction under IEEPA (or even TWEA).

The fact that the CIT is currently considering other parallel IEEPA challenges is of no moment. The parties in those cases have not disputed the Court's jurisdiction, and the CIT has not addressed it. As of now, there is no decision for this Court to contradict nor one to which it could defer. *Cf. Schindler Elevator Corp. v. Washington Metro. Area Transit Auth.*, 16 F.4th 294, 299 (D.C. Cir. 2021) (noting "the longstanding principle that '[w]hen a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed'" (quoting *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144, (2011) (alteration in original)). And, as noted above (p. 5, *supra*), three other parallel IEEPA cases have been filed in federal district courts. Deference is particularly inappropriate because, as explained next, many Circuits (including this one) have consistently exercised jurisdiction over IEEPA challenges, while the CIT has *never* done so.

### B.   Considerations Of Uniformity And Expertise Weigh In Favor Of This Court's Jurisdiction, Not The CIT's

Defendants argue that the purpose of granting the CIT exclusive jurisdiction over certain actions was to promote uniformity and to take advantage of the CIT's trade expertise. Transfer Mot. 9-10. To be sure, the CIT "has unique and specialized expertise in trade law." *Marmen Inc. v. United States*, No. 23-1877, 2025 WL 1162798, at *2 (Fed. Cir. Apr. 22, 2025); *see United States v. Haggar Apparel Co.*, 526 U.S. 380, 394 (1999) (noting the "expertise of the Court of International Trade" in a "specialized area of the law" involving customs). But those justifications do not apply here: the CIT has no particular expertise in, or experience with, adjudicating IEEPA

matters. In fact, to Plaintiffs' knowledge, the CIT has *never* heard an IEEPA challenge and the government has *never* moved to transfer an IEEPA challenge there (until the past month).

*Uniformity.* A finding that the CIT has exclusive jurisdiction in this case would undermine, not promote, uniformity. It would overnight shift a class of cases away from district courts and the regional courts of appeals, which have developed a body of case law regarding IEEPA over decades, to the CIT and Federal Circuit, which have no special expertise with respect to IEEPA or the many disparate national security and foreign policy issues that arise under that act. That is so for at least two reasons.

First, Section 1581(i) provides for exclusive jurisdiction with respect to actions "commenced against the United States, its agencies, or its officers." But cases involving IEEPA often are brought by the government. *See* 50 U.S.C. § 1705(a)-(c) (establishing civil and criminal penalties for persons who "violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under" IEEPA); *see, e.g.*, *United States v. Three Sums Totaling $612,168.23 in Seized U.S. Currency*, 55 F.4th 932 (D.C. Cir. 2022). Because Section 1581(i) plainly does not cover civil actions brought by the United States arising out of IEEPA—and because the CIT has no jurisdiction over criminal cases at all—all actions brought *by the United States* arising under IEEPA fall outside the CIT's jurisdiction. Regional circuit law thus governs when a private litigant faces an IEEPA suit from the government, while Federal Circuit law would control a similar case if preemptively brought by the same litigant under the government's position. That can't be right.[6]

---

[6] In contrast to that arbitrary jurisdictional split, Congress has ensured uniformity over most civil trade cases brought by the United States by giving the CIT "exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States" in specified circumstances. 28 U.S.C. § 1582.

Second, IEEPA provides for seizures, but the CIT lacks jurisdiction over challenges to seizures. *See, e.g.*, *ICCS USA Corp. v. United States*, 952 F.3d 1325, 1328 n.1 (Fed. Cir. 2020); *Inspired Ventures, LLC v. United States*, 739 F. Supp. 3d 1343, 1354-56 (Ct. Int'l Trade 2024). If Defendants were correct, cases arising under IEEPA that do not challenge seizures would be heard in the CIT, while IEEPA cases challenging seizures would be heard in district court. Defendants point to no authority suggesting that Congress intended to (or had any motivation to create) such an anomalous scheme, in which government IEEPA actions and IEEPA seizure actions must be brought in district court, while all other IEEPA cases must be channeled to the CIT.

*Expertise*. Nor would granting transfer favor the CIT's expertise. If Defendants were correct that IEEPA is a law "providing for tariffs," that would mean that the CIT would become the "exclusive" home of *every* civil action against the United States arising out IEEPA going forward—whether the particular action involved tariffs or not. After all, Section 1581(i)'s text confers exclusive jurisdiction in the CIT based on whether the case arises out of "any law," not a particular challenged action, "providing for *** tariffs." That would be a sea change in IEEPA practice. District and regional circuit courts have developed extensive expertise under IEEPA over the past several decades that the CIT lacks. *E.g.*, *TikTok Inc. v. Garland*, 122 F.4th 930, 942 (D.C. Cir. 2024), *aff'd*, 145 S. Ct. 57 (2025); *Van Loon v. Department of the Treasury*, 122 F.4th 549, 571 (5th Cir. 2024). Indeed, according to a recent Westlaw search, literally hundreds of district courts have cited IEEPA, including over 300 citing 50 U.S.C. § 1701 and more than 150 citing 50 U.S.C. § 1702. Meanwhile, Westlaw reveals *zero* CIT cases citing either provision.

That is unsurprising. Virtually all cases brought by private parties under IEEPA have nothing to do with the CIT's "unique and specialized expertise in trade law." For example, *Dames & Moore v. Regan*, 453 U.S. 654 (1981), which arrived at the Supreme Court from the Ninth

10

Circuit, addressed whether IEEPA authorized the President to nullify attachments and liens on Iranian assets in the United States, direct that those assets be transferred to Iran, and suspend legal claims against Iran that could be presented to the Iran-U.S. Claims Tribunal. The case had nothing to do with importations. Nor do cases challenging the designation of individuals or entities as Specially Designated Global Terrorists or Specially Designated Nationals, *see, e.g.*, *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 159 (D.C. Cir. 2003); *Fulmen Co. v. Office of Foreign Assets Control*, 547 F. Supp. 3d 13 (D.D.C. 2020); or cases seeking to unblock wire transfers, *OKKO Bus. PE v. Lew*, 133 F. Supp. 3d 17 (D.D.C. 2015); or actions to enjoin restrictions on business transactions with social media companies, *TikTok Inc. v. Trump*, 507 F. Supp. 3d 92 (D.D.C. 2020). The Court should not conclude that Congress intended for these (and many other cases arising out of IEEPA) to be heard by the CIT, when the CIT has no specialized expertise over such issues.

**III.     If The Court Concludes It Lacks Jurisdiction, It Should Dismiss Rather Than Transfer**

If the Court were nonetheless to agree with Defendants and conclude that the CIT has exclusive jurisdiction, it should not transfer the case to the CIT. *See* 28 U.S.C. § 1631 (authorizing transfer in lieu of dismissal "if it is in the interest of justice"). Plaintiffs instead respectfully request that the Court simply dismiss this case for lack of jurisdiction—the default course of action—so that Plaintiffs may file an immediate appeal to the D.C. Circuit.

## CONCLUSION

This Court should deny Defendants' Motion for Transfer.[7]

Dated: May 7, 2025

Respectfully submitted,

*/s/ Pratik A. Shah*
Pratik A. Shah
  D.C. Bar No. 497108
James E. Tysse
  D.C. Bar No. 978722
Matthew R. Nicely
   D.C. Bar No. 430564
Daniel M. Witkowski (*admission pending*)
  D.C. Bar No. 1028791
Kristen E. Loveland
  D.C. Bar No. 1684978
AKIN GUMP STRAUSS HAUER
  & FELD LLP
2001 K Street N.W.
Washington, D.C. 20006
Tel: (202) 887-4000
pshah@akingump.com

*Counsel for Plaintiffs*

---

[7] Plaintiffs contend that this Court should "grant defendants' motion to transfer before the hearing set on plaintiffs' preliminary injunction motion." Opp. to Mot. for Prelim. Inj. 10, ECF No. 16. But the Court already rejected that request when setting the May 27 hearing for *both* pending motions. *See* Minute Order (Apr. 29, 2025) (scheduling "hearing on [9] Plaintiffs' Motion for Preliminary Injunction and [8] Defendants' Motion to Transfer Case"). That makes sense. As discussed, whether IEEPA provides for tariffs is the principal issue in both motions, so one should not be resolved in isolation from the other.