**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LEARNING RESOURCES, INC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HAND2MIND, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-01248-RC |
| | ) | |
| DONALD J. TRUMP, President of the United | ) | |
| States, in his official capacity; KRISTI NOEM, | ) | |
| Secretary of the U.S. Department of Homeland | ) | |
| Security, in her official capacity; U.S. | ) | |
| DEPARMENT OF HOMELAND SECURITY; | ) | |
| SCOTT BESSENT, Secretary of the Treasury, | ) | |
| in his official capacity; U.S. DEPARTMENT | ) | |
| OF THE TREASURY; HOWARD LUTNICK, | ) | |
| Secretary of Commerce, in his official capacity; | ) | |
| U.S. DEPARTMENT OF COMMERCE; | ) | |
| PETE R. FLORES, Acting Commissioner of | ) | |
| U.S. Customs & Border Protection, in his official | ) | |
| capacity; U.S. CUSTOMS & BORDER | ) | |
| PROTECTION; JAMIESON GREER, | ) | |
| U.S. Trade Representative, in his official capacity; | ) | |
| THE OFFICE OF THE U.S. TRADE | ) | |
| REPRESENTATIVE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER**

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

ARGUMENT........................................................................................................................1

   I.    The Court Of International Trade Has Exclusive Jurisdiction Over This Case................1

      A.   28 U.S.C. § 1581(i) Divests This Court Of Jurisdiction.............................................2

      B.   The Court Of International Trade (Like Its Predecessor) Has Exercised
           Jurisdiction Over Materially Indistinguishable Challenges.......................................5

      C.   Precedent And Other Authorities Require Transfer....................................................8

      D.   To The Extent The Court Evaluates The Merits, Plaintiffs' Arguments Fail.............12

   II.   Transfer, Not Dismissal, Is The Appropriate Action Here...........................................13

CONCLUSION....................................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AM/NS Calvert LLC v. United States*,
  654 F. Supp. 3d 1324 (Ct. Int'l Trade 2023)........................................................................8

*Amerijet Int'l, Inc. v. DHS*,
  43 F. Supp. 3d 4 (D.D.C. 2014) .......................................................................................13

*Bank One Chi., N.A. v. Midwest Bank & Tr. Co.*,
  516 U.S. 264 (1996).............................................................................................................5

*Barclay Indus., Inc. v. Carter*,
  494 F. Supp. 912 (D.D.C. 1980)........................................................................................9

*Brownback v. King*,
  592 U.S. 209 (2021)...........................................................................................................11

*Chisolm v. United States*,
  82 Fed. Cl. 185 (2008),
  *aff'd*, 298 F. App'x 957 (Fed. Cir. 2008) ........................................................................11

*Christopher Vill., L.P. v. United States*,
  360 F.3d 1319 (Fed. Cir. 2004)........................................................................................11

*Commodities Exp. Co. v. U.S. Customs Serv.*,
  957 F.2d 223 (6th Cir. 1992).............................................................................................10

*Conoco, Inc. v. U.S. Foreign-Trade Zones Bd.*,
  18 F.3d 1581 (Fed. Cir. 1994).......................................................................................4, 8

*Consumers Union v. Comm. for the Implementation of Textile Agreements*,
  561 F.2d 872 (D.C. Cir. 1977) .......................................................................................5, 6

*\*Cornet Stores v. Morton*,
  632 F.2d 96 (9th Cir. 1980)...........................................................................................4, 6

*DHS v. MacLean*,
  574 U.S. 383 (2015)...........................................................................................................10

*Dubost v. USPTO*,
  777 F.2d 1561 (Fed. Cir. 1985).........................................................................................7

*Earth Island Inst. v. Christopher*,
  6 F.3d 648 (9th Cir. 1993) .................................................................................................7

*Ellet v. Stanislaus,*
  506 F.3d 774 (9th Cir. 2007)...........................................................................2

*Ferebok v. Dist. of Columbia,*
  534 F. Supp. 2d 25 (D.D.C. 2008),
  *aff'd*, 2008 WL 11530323 (D.C. Cir. June 24, 2008).......................................1

*Ghebreyesus v. Fed. Democratic Republic of Ethiopia,*
  No. 21-cv-2865, 2022 WL 4534631 (D.D.C. Sept. 28, 2022)..........................13

*In re Gregory,*
  705 F.2d 1118 (9th Cir. 1983)...........................................................................2

*Heller, Ehrman, White & MacAuliffe v. Babbitt,*
  922 F.2d 360 (D.C. Cir. 1993) ..........................................................................4

*\*Henry Pollak, Inc. v. Blumenthal,*
  444 F. Supp. 56 (D.D.C. 1977) ......................................................................6, 8

*Hose v. INS,*
  180 F.3d 992 (9th Cir. 1999).............................................................................11

*Hutchison Quality Furniture, Inc. v. United States,*
  827 F.3d 1355 (Fed. Cir. 2016) .........................................................................4

*Int'l Lab. Rights Fund v. Bush,*
  357 F. Supp. 2d 204 (D.D.C. 2004)....................................................................6

*Int'l Lab. Rights Educ. & Rsch. Fund v. Bush,*
  954 F.2d 745 (D.C. Cir. 1992) ..........................................................................2

*Jan's Helicopter Serv., Inc. v. FAA,*
  525 F.3d 1299 (Fed. Cir. 2008) .........................................................................11

*\*K Mart Corp. v. Cartier, Inc.,*
  485 U.S. 176 (1988).................................................................................. passim

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ...........................................................................................1

*Miami Free Zone Corp. v. Foreign Trade Zones Board,*
  22 F.3d 1110 (D.C. Cir. 1994) ...................................................................3, 5, 9

*Orleans Int'l, Inc. v. United States,*
  334 F.3d 1375 (Fed. Cir. 2003)....................................................................8, 10

*Pentax Corp. v. Myhra,*
  72 F.3d 708 (9th Cir. 1995)....................................................................................... 9

*PODS, Inc. v. Porta Stor, Inc.,*
  484 F.3d 1359 (Fed. Cir. 2007).................................................................................. 7

*Pro. Managers' Ass'n v. United States,*
  761 F.2d 740 (D.C. Cir. 1985) .................................................................................. 13

*Ramos v. Louisiana,*
  590 U.S. 83 (2020)...................................................................................................... 5

*Roseberry-Andrews v. Wilson,*
  292 F. Supp. 3d 446 (D.D.C. 2018)......................................................................... 10

*S. Corp. v. United States,*
  690 F.2d 1368 (Fed. Cir. 1982).................................................................................. 9

*\*SCM Corp. v. ITC,*
  549 F.2d 812, 821 (D.C. Cir. 1977)........................................................................... 9

*TikTok Inc. v. Trump,*
  507 F. Supp. 3d 92 (D.D.C. 2020)............................................................................ 12

*Totes-Isotoner Corp. v. United States,*
  594 F.3d 1346 (Fed. Cir. 2010)............................................................................. 4, 5

*United States v. Williams,*
  553 U.S. 285 (2008)................................................................................................. 10

*\*United States v. Yoshida,*
  526 F.2d 560 (C.C.P.A. 1975)......................................................................... 6, 12, 13

*\*Webber v. DHS,*
  No. 25-cv-26, 2025 WL 1207587 (D. Mont. Apr. 25, 2025)............................. 1, 2, 6

*Williams Gas Processing-Gulf Coast Co. v. FERC,*
  331 F.3d 1011 (D.C. Cir. 2003) ............................................................................... 11

*Wye Oak Tech., Inc. v. Republic of Iraq,*
  24 F.4th 686 (D.C. Cir. 2022)................................................................................... 5

**Statutes**

28 U.S.C. § 1337 ........................................................................................................... 8

28 U.S.C. § 1581(i) ................................................................................................. passim

**Other Authorities**

*H.R. Rep. No. 96-1235 (1980) ............................................................................... passim

## INTRODUCTION

"Congress granted the Court of International Trade exclusive jurisdiction over suits relating to tariffs, duties, fees, or other taxes on the importation of merchandise." *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 188 (1988) (cleaned up). Plaintiffs challenge tariffs imposed under the International Emergency Economic Powers Act (IEEPA), as well as their administration and enforcement, by asking for changes to the Harmonized Tariff Schedule. Their challenge falls within the exclusive jurisdiction of the Court of International Trade, and transfer of this action to that court is the only appropriate recourse. *See Webber v. DHS*, No. 25-cv-26, 2025 WL 1207587, at *6 (D. Mont. Apr. 25, 2025) (transferring case raising a materially indistinguishable IEEPA challenge to the Court of International Trade).

Plaintiffs' arguments to the contrary conflict with circuit precedent and materially identical cases currently pending before the Court of International Trade on the merits, and, ultimately, turn Congress's exclusive jurisdictional scheme on its head. The regime plaintiffs advocate, where the merits of their challenge to the President's tariffs are "coextensive with the jurisdictional question," ECF No. 17 (PI Reply) at 25 n.7, would effectively destroy the exclusivity of the Court of International Trade's jurisdiction, rendering the exclusive-jurisdiction statute self-defeating. That is no way to interpret the statute. Instead, transfer is required for the Court of International Trade to construe the statute and decide the merits of the case.

## ARGUMENT

## I.    The Court Of International Trade Has Exclusive Jurisdiction Over This Case

As in all cases, plaintiffs bear the burden of establishing that this Court has jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Ferebok v. Dist. of Columbia*, 534 F. Supp. 2d 25, 27 (D.D.C. 2008) (finding that plaintiffs failed to meet their burden, where a different

court possessed exclusive jurisdiction), *aff'd*, 2008 WL 11530323 (D.C. Cir. June 24, 2008). Plaintiffs have not met that burden here: jurisdiction lies exclusively with the Court of International Trade, and "the decision of whether to transfer this matter is not a discretionary one." *Webber*, 2025 WL 1207587, at *6. Moreover, precedent from the D.C. Circuit and other courts of appeals makes clear that to the extent there are threshold questions about the Court of International Trade's jurisdiction, respect for the system of exclusive jurisdiction Congress established makes transfer the appropriate course to allow the specialized trade court to assess its own jurisdiction.

## A.    28 U.S.C. § 1581(i) Divests This Court Of Jurisdiction

This Court lacks jurisdiction for two independent reasons. First, the Court of International Trade has "exclusive jurisdiction" over challenges arising out of any law "providing for . . . tariffs." 28 U.S.C. § 1581(i)(1)(B); *see* ECF No. 8 (Mot.) at 11. Section 1581(i) is a "broad jurisdictional grant," enacted as an additional and "residual" source of jurisdiction to supplement the more specific provisions of subsections (a) through (h). H.R. Rep. No. 96-1235 at 47 (1980). In furtherance of that broad grant, Congress used broad language. "Providing for," in this context, means "relating to." *K Mart*, 485 U.S. at 188; *see* H.R. Rep. No. 96-1235 at 34 (the adopted language refers to "actions which arise out of a law of the United States *pertaining to* international trade" (emphasis added)); *Int'l Lab. Rights Educ. & Rsch. Fund v. Bush*, 954 F.2d 745, 747 (D.C. Cir. 1992) (Henderson, J., concurring) (this "expansive definition" covers claims that "relate to" import duties); *see also Ellet v. Stanislaus*, 506 F.3d 774, 777 (9th Cir. 2007) (regarding a broad bankruptcy statute, construing the phrase "provide for" to mean "make a provision for," "deal with," or "refer to."); *In re Gregory*, 705 F.2d 1118, 1122 (9th Cir. 1983) (same). The Supreme Court has noted, for example, that section 1581(i)

grants the Court of International Trade exclusive jurisdiction over "suits *relating to*" the matters listed in that section. *K Mart*, 485 U.S. at 188 (emphasis added). This does not mean, as plaintiffs mischaracterize our position, that the Court of International Trade has exclusive jurisdiction over "*every* suit against the Government challenging customs-related laws and regulations." ECF No. 18 (Opp.) at 3-4 (quoting *K Mart*, 485 U.S. at 188). Here, it simply means the delineation Congress and the Supreme Court have drawn in section 1581(i)(1)(B): "Congress granted the Court of International Trade exclusive jurisdiction over suits relating to tariffs, duties, fees, or other taxes on the importation of merchandise"—just "not if they are for the raising of revenue." *K Mart*, 485 U.S. at 188 (cleaned up). This action readily falls within the meaning of section 1581(i)(1)(B).

Plaintiffs resist this conclusion primarily based on *Miami Free Zone Corp. v. Foreign Trade Zones Board*, 22 F.3d 1110 (D.C. Cir. 1994). Opp. 3. There, the D.C. Circuit considered whether the Court of International Trade had exclusive jurisdiction over a suit brought under a statute that provided certain *exemptions* from duties, and questioned whether a statute allowing for exemptions from tariffs and duties could be one "providing for tariffs and duties" under section 1581(i)(1)(B). *Miami Free Zone*, 22 F.3d at 1112.

No such issue is present here. There is no argument that IEEPA creates an exemption or otherwise prevents the collection of applicable tariffs and duties. Instead, the President has exercised authority under IEEPA to impose tariffs, and plaintiffs seek to challenge the validity of that exercise of authority. That challenge is precisely the sort of action in which Congress's grant of exclusive jurisdiction to the Court of International Trade over tariff matters calls for centralization of such matters in that court. Plaintiffs repeatedly assert that the tariffs are being implemented by Customs and Border Protection through the Harmonized Tariff Schedule

(HTSUS), and that such implementation is unlawful. *See, e.g.*, ECF No. 1 ¶¶ 9, 37, 40, 43, 46. Plaintiffs' very theory of harm hinges on their payment of "additional tariffs . . . because of the Challenged Orders and corresponding revisions to the HTSUS." *Id.* ¶ 24. And they seek to enjoin enforcement of those tariffs, *id.* ¶¶ 9, 74, 90, and to "set modifications to the HTSUS aside," *id.* ¶ 99. At the heart of this action is plaintiffs' request that they "no longer be required to pay the tariff[s]," *id.* ¶ 24—a matter that belongs before the court with "an already developed expertise in international trade and tariff matters," *Conoco, Inc. v. U.S. Foreign-Trade Zones Bd.*, 18 F.3d 1581, 1586 (Fed. Cir. 1994); *see, e.g.*, *Totes-Isotoner Corp. v. United States*, 594 F.3d 1346, 1350-51 (Fed. Cir. 2010) (importer's challenge to a higher tariff implemented under the Harmonized Tariff Schedule was reviewable by the Court of International Trade under section 1581(i)); *Cornet Stores v. Morton*, 632 F.2d 96 (9th Cir. 1980) (challenge to tariffs imposed under IEEPA's predecessor statute, "fulfilled through the existing scheme for the collection of customs duties," belonged in the Court of International Trade). Creative pleading cannot alter the fundamental nature of plaintiffs' suit or displace Congress's choice to create a single exclusive forum for these disputes. *See Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1360 (Fed. Cir. 2016) (assessing the "true nature of a particular action" to determine whether jurisdiction is proper); *Heller, Ehrman, White & MacAuliffe v. Babbitt*, 922 F.2d 360, 363 (D.C. Cir. 1993) (plaintiffs "may not, by creatively framing their complaint, circumvent a congressional grant of exclusive jurisdiction").[1]

---

[1] Plaintiffs briefly raise two other ancillary points. First, they say section 1581(i) does not apply because IEEPA is not located in Title 19 of the U.S. Code where other trade laws are located. Opp. 4. But section 1581(i) does not limit jurisdiction to laws appearing in Title 19, and a statute's placement in the U.S. Code does not determine its scope. *See* H.R. Rep. No. 96-1235 at 34-35 (opting for a "generic approach" rather than a "listing of specific statutes"). Second, plaintiffs argue that an earlier congressional proposal would have given the Court of International Trade an even broader grant of jurisdiction. Opp. 4 n.2. That Congress considered giving the court even broader jurisdiction does not mean that section 1581(i) does not apply here,

Second, plaintiffs respond only with respect to section 1581(i)(1)(B), but defendants' motion (at 11) also explained that, through another provision, Congress additionally granted the Court of International Trade exclusive jurisdiction over actions pertaining to laws providing for "administration and enforcement *with respect to the matters* referred to in" sections (a) through (i). 28 U.S.C. § 1581(i)(1)(D) (covering a wide array of trade laws) (emphasis added); *see also Miami Free Zone*, 22 F.3d at 1112 (holding that the "with respect to matters" language in this subsection "is more expansive" than the preceding paragraphs of 1581(i)). Plaintiffs have thus forfeited this argument, dooming their jurisdiction argument. *See, e.g.*, *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 696 (D.C. Cir. 2022) ("arguments *in favor* of subject matter jurisdiction can be waived by inattention or deliberate choice" (emphasis added)). In any event, this is such a lawsuit: Plaintiffs challenge the administration and enforcement of tariffs against them, including the modification to the Harmonized Tariff Schedule, which is a quintessential matter for the Court of International Trade under section 1581(i). *See, e.g.*, *Totes-Isotoner*, 594 F.3d at 1350-51. Yet Plaintiffs do not answer this independent argument.

## B.    The Court Of International Trade (Like Its Predecessor) Has Exercised Jurisdiction Over Materially Indistinguishable Challenges

That the Court of International Trade has exercised its jurisdiction over similar cases only confirms that plaintiffs filed their action in the wrong court. *See Consumers Union v. Comm. for the Implementation of Textile Agreements*, 561 F.2d 872, 874 (D.C. Cir. 1977) (conclusion that the district court lacked jurisdiction "is buttressed by the fact that the Customs Court has

---

and inferences from unenacted versions of statutes are weak. *See* H.R. Rep. No. 96-1235 at 34 (the adopted language in section 1581(i) refers to "actions which arise out of a law of the United States pertaining to international trade"); *Ramos v. Louisiana*, 590 U.S. 83, 98 (2020) ("[W]e are much better served by interpreting the language Congress retained."); *Bank One Chi., N.A. v. Midwest Bank & Tr. Co.*, 516 U.S. 264, 279 (1996) (Scalia, J., concurring) (explaining problems with relying on "the drafting evolution" of a bill).

frequently exercised such jurisdiction"); *Int'l Lab. Rights Fund v. Bush*, 357 F. Supp. 2d 204, 209 (D.D.C. 2004) ("that the CIT has previously exercised jurisdiction" over the same type of case "also supports the Court's finding that the plaintiffs' action falls within the CIT's exclusive jurisdiction"). Plaintiffs concede that "the CIT is currently considering other parallel IEEPA challenges," Opp. 8—two of which have been extensively briefed on the merits and will be argued this week and next. *See V.O.S. Selections, Inc. v. Trump*, No. 25-cv-66, ECF No. 10 (Ct. Int'l Trade Apr. 18, 2025) (May 13 hearing on preliminary injunction and summary judgment); *Oregon v. Trump*, No. 25-cv-77, ECF Nos. 14, 15 (Ct. Int'l Trade May 7, 2025) (May 21 hearing on summary judgment); *see also Princess Awesome v. CBP*, No. 25-cv-78, ECF No. 1 (Ct. Int'l Trade Apr. 24, 2025); *Barnes v. United States*, No. 25-cv-43, ECF No. 3 (Ct. Int'l Trade Feb. 3, 2025). Plaintiffs also concede that the Federal Circuit's predecessor upheld tariffs imposed under substantively identical language in IEEPA's predecessor statute (TWEA) and that the case was heard originally "in the U.S. Customs Court." Opp. 4; *see United States v. Yoshida*, 526 F.2d 560 (C.C.P.A. 1975). And plaintiffs concede that "other courts," including this court, have transferred actions "in two other TWEA" cases and "an IEEPA tariff challenge." Opp. 4-5; *see Cornet*, 632 F.2d 96; *Henry Pollak, Inc. v. Blumenthal*, 444 F. Supp. 56 (D.D.C. 1977); *Webber*, 2025 WL 1207587, at *1.

In plaintiffs' telling, all of those courts got it wrong. But precedent instructs that this "frequent[] exercise[]" of jurisdiction by the Court of International Trade is strong evidence of that court's exclusive jurisdiction. *Consumers Union*, 561 F.2d at 874; *see Henry Pollak*, 444 F. Supp. at 59 (concluding that "plaintiffs ask too much of this tribunal in claiming the right to come before it," where Congress and the Federal Circuit's predecessor "are authoritative sources of wisdom regarding Customs Court jurisdiction" and the Supreme Court, by denying certiorari

in a follow-on case to *Yoshida*, had "chosen not to speak on the matter").

The Court can easily reject each of plaintiffs' arguments. First, they say that *Yoshida*, *Cornet*, and *Henry Pollak* are inapposite because they involved a different jurisdictional provision, section 1582, that has since been amended, and that *Webber* relied primarily on those cases. Opp. 5. This purported distinction only cuts against plaintiffs because the amendment (section 1581(i)) "*expanded* the jurisdiction of the CIT beyond that of the earlier Customs Court." *Earth Island Inst. v. Christopher*, 6 F.3d 648, 651 (9th Cir. 1993) (emphasis added). Former section 1582 gave the then-Customs Court exclusive jurisdiction over challenges to the calculation of duties owed and similar administrative decisions by customs officers. In creating the Court of International Trade, Congress retained this jurisdiction in the modern section 1581(a), and it added new bases for jurisdiction, including through section 1581(i). *See Earth Island*, 6 F.3d at 651; *see also id.* at 652 (distinguishing cases permitting lawsuits to proceed in district court that were "decided before § 1581(i) expanded the jurisdiction of the CIT"); H.R. Rep. No. 96-1235 at 47 (enacting section 1581(i) as a "residual" source of jurisdiction). Thus, far from "shed[ding] no light" on the jurisdictional question here, Opp. 5 n.3, *Yoshida*, *Cornet*, *Henry Pollak*, and *Webber* all confirm that this case belongs in the specialized trade court, not district court.

Next, plaintiffs urge this Court to discount the pending merits proceedings in the Court of International Trade because "[t]he parties in those cases have not disputed the Court's jurisdiction, and the CIT has not addressed it." Opp. 8. The Court of International Trade, just like other courts, must "assure itself that jurisdiction exists" before considering the merits of a case. *Dubost v. USPTO*, 777 F.2d 1561, 1564 (Fed. Cir. 1985); *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1365 (Fed. Cir. 2007). That court has done so even when no party challenged its

statutory jurisdiction. *See, e.g.*, *AM/NS Calvert LLC v. United States*, 654 F. Supp. 3d 1324, 1337 (Ct. Int'l Trade 2023).

Plaintiffs also seem to think that because district courts have heard other challenges under IEEPA *not* pertaining to tariffs, it somehow follows that *this* IEEPA challenge must be heard in district court. Opp. 8-11. Plaintiffs' reasoning "fail[s] to distinguish between the different types of actions that could arise out of" IEEPA. *Orleans Int'l, Inc. v. United States*, 334 F.3d 1375, 1379 (Fed. Cir. 2003). "That many matters arising under [IEEPA] . . . are adjudicated by the district courts is beside the point." *Henry Pollak*, 444 F. Supp. at 59. Plaintiffs' IEEPA challenge expressly concerns tariffs, a "specialized area of the law" in which plaintiffs admit the Court of International Trade "has unique and specialized expertise." Opp. 8; *see Conoco*, 18 F.3d at 1586 (the purpose of consolidating "international trade and tariff matters" before that court was to achieve "uniformity and consistency" in those subject matters). Such a challenge belongs in the Court of International Trade. *See Henry Pollak*, 444 F. Supp. at 59 ("[T]he issue is where litigation involving the import surcharge program in particular belongs."). That conclusion has no bearing on other IEEPA challenges—concerning economic sanctions, criminal actions, seizures, or other matters, Opp. 8-11—that can continue to be heard in district courts.

Plaintiffs similarly argue that "three similar IEEPA tariff challenges are pending in federal district courts," Opp. 5, 8, apparently believing that shows that the general grant of federal-question jurisdiction supplants the Court of International Trade's exclusive jurisdiction. That, of course, gets the analysis backward. *See* 28 U.S.C. § 1337 (divesting district courts of jurisdiction over "any matter within the exclusive jurisdiction of the Court of International Trade"). In none of those actions has the district court found jurisdiction proper, and defendants have moved to transfer each to the Court of International Trade. Litigants cannot escape

exclusivity merely by filing repeatedly in the wrong courts.

### C.      Precedent And Other Authorities Require Transfer

Even if this Court has any doubt about whether this action falls within the broad jurisdictional grant of 28 U.S.C. § 1581(i), that question should be resolved by the Court of International Trade (and the Federal Circuit in due course), which is intimately familiar with the scope of its own jurisdictional statute. In *SCM Corp. v. ITC*, for example, the D.C. Circuit concluded that, particularly given the specialized nature of the trade court, "the Customs Court itself should be given the opportunity to utilize its own expertise concerning the applicable statutes, and to determine whether or not it has jurisdiction to review" the plaintiff's challenge. 549 F.2d 812, 821 (D.C. Cir. 1977). The D.C. Circuit arrived at this holding even though it recognized there were "serious questions" with the plaintiff's ability to bring its claims before the Customs Court. *Id.* But because the argument for the Customs Court's exclusive jurisdiction reflected "quite possible constructions" of the jurisdictional statute, transfer was necessary. *Id.*; *accord Pentax Corp. v. Myhra*, 72 F.3d 708, 711 (9th Cir. 1995) ("the prudent thing to do is . . . to transfer the case to the CIT so that the CIT can determine the question of its own jurisdiction").

The D.C. Circuit acted similarly in *Miami Free Zone*. Despite doubting that the statutory reading in favor of exclusive jurisdiction was "the obvious one," the court recognized "the value of uniformity in judicial review of these matters" and thus deferred to the Federal Circuit's determination of the Court of International Trade's jurisdiction.[2] 22 F.3d at 1113; *see Barclay*

---

[2] Plaintiffs contend there is no determination to defer to, Opp. 8, but the Federal Circuit's predecessor already exercised jurisdiction to reach the merits of the same challenge under IEEPA's predecessor statute, *Yoshida*, 526 F.2d 560. That decision remains binding on courts in the Federal Circuit. *S. Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982). Plaintiffs' argument rings hollow in any event, where they rushed to file in the wrong court, before the Court of International Trade imminently hears the same challenges on the merits.

*Indus., Inc. v. Carter*, 494 F. Supp. 912, 913 (D.D.C. 1980) (holding that the Customs Court had exclusive jurisdiction, "[a]lthough the answer is not free from doubt"); *Roseberry-Andrews v. Wilson*, 292 F. Supp. 3d 446, 459 (D.D.C. 2018) (under a different exclusive jurisdictional provision, concluding that "the correct course of action is to transfer the entire case" because the Court of Federal Claims "may have jurisdiction").

This is not a "practical consideration[]" that avoids "otherwise available jurisdiction," Opp. 7; instead, this rule follows from the nature of an exclusive grant of jurisdiction. Plaintiffs' approach—requiring the court in which a tariff challenge is filed to decide the underlying merits, regardless of whether it has jurisdiction—would defeat the exclusive jurisdiction scheme Congress established. That would mean that courts effectively exercise concurrent jurisdiction over identical matters, "negat[ing] the intent of Congress in granting *exclusive* jurisdiction over certain matters to the Court of International Trade." *Orleans*, 334 F.3d at 1378 (cleaned up); *see Commodities Exp. Co. v. U.S. Customs Serv.*, 957 F.2d 223, 227 (6th Cir. 1992) (the Court of International Trade "has the power to decide its own jurisdiction"; to hold otherwise "would invite the various district and circuit courts to redraw the jurisdictional lines separating the two tribunals"). Plaintiffs' approach would turn section 1581 into a self-defeating statute, effectively nullifying, instead of creating, exclusive jurisdiction in the Court of International Trade. *But see, e.g.*, *DHS v. MacLean*, 574 U.S. 383, 393 (2015) (rejecting interpretation that would permit agencies to ban whistleblowing, when Congress enacted statute "precisely because it did not trust agencies to regulate whistleblowers"); *United States v. Williams*, 553 U.S. 285, 302 (2008) (rejecting a reading of a statute that would "be self-defeating" and "effectively nullify" it). If each district court must decide the merits of a tariff challenge to determine whether it has jurisdiction, the Court of International Trade in effect lacks exclusive jurisdiction. The Court

should reject plaintiffs' attempt to end-run the system Congress intentionally created—especially when functionally identical suits are pending in the Court of International Trade right now, and that court is poised to decide those suits on their merits soon.

Other exclusive-jurisdiction regimes follow the same principle. "The Federal Circuit has emphasized that issues within [the lower courts'] exclusive jurisdiction must be decided in the first instance in [those] court[s]." *Chisolm v. United States*, 82 Fed. Cl. 185, 197 (2008), *aff'd*, 298 F. App'x 957 (Fed. Cir. 2008); *see Christopher Vill., L.P. v. United States*, 360 F.3d 1319, 1332-33 (Fed. Cir. 2004) (rejecting another circuit's merits decision on a question for which exclusive jurisdiction rested in the Court of Federal Claims); *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1309 (Fed. Cir. 2008) (claims exceeding the Little Tucker Act should be transferred from district courts without examination of the merits because "[a] contrary rule would seriously undermine Congress's decision to vest the Court of Federal Claims with exclusive jurisdiction over [such] claims").

The authorities cited by plaintiffs (at 6-7) do not cut against this conclusion because they are not matters where one court has exclusive jurisdiction over a matter in order to guarantee uniformity and unique expertise, and where permitting another court to decide the merits in the first instance would effectively defeat that scheme. *Brownback v. King*, 592 U.S. 209 (2021), addressed a question based on res judicata, a doctrine that requires merits determination. *Williams Gas Processing-Gulf Coast Co. v. FERC*, 331 F.3d 1011 (D.C. Cir. 2003), concerned the *agency's* jurisdiction over a petition, not the Court's. And *Hose v. INS*, 180 F.3d 992 (9th Cir. 1999), held that transfer was improper when the claims underlying a habeas petition were not subject to judicial review. None of those cases has any bearing on this case.

**D.     To The Extent The Court Evaluates The Merits, Plaintiffs' Arguments Fail**

If this Court were to look to the merits to decide transfer, as plaintiffs ask, it should still transfer the case because IEEPA provides for imposition of tariffs, as defendants explained in opposing plaintiffs' motion for a preliminary injunction. *See* ECF No. 16. We respectfully refer the Court to that merits briefing. Additionally, we summarize here defendants' response to additional merits arguments that plaintiffs have since made, which mirror those presently before the Court of International Trade on fully briefed merits motions.

Plaintiffs argue that defendants "cannot cite a single other statute in which a grant to the Executive of the power to 'regulate' is understood as authority to impose … tariffs." PI Reply 4. But defendants already have: IEEPA's predecessor, TWEA. *See Yoshida*, 526 F.2d at 576. Regardless, "regulate" is a "transitive verb and require[s] an object—like an activity, process, or action—to express a complete thought." *TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 103 (D.D.C. 2020). The question is thus not whether the word "regulate" carries that power alone and in every circumstance, but whether IEEPA, including the phrase "regulate . . . importation," authorizes tariffs, given IEEPA's history and purpose. None of plaintiffs' examples are relevant to that question. *See V.O.S. Selections*, ECF No. 27 at 6-9 (making these points before the Court of International Trade).

Plaintiffs try to paint *Yoshida* as irrelevant (PI Reply 9-10, 13, 15), but there is no question that Congress acknowledged *Yoshida* and its holding that President Nixon permissibly relied on TWEA to impose tariffs, and not only kept the exact same operative language in IEEPA but also declined to add tariffs as an exception to the general grant of authority set forth in IEEPA. *See V.O.S. Selections*, ECF No. 27 at 3-4; *see also* ECF No. 16 at 17.

Plaintiffs also argue that Congress's enactment of Section 122 of the Trade Act of 1974

(19 U.S.C. § 2132) means that it intended to limit the circumstances in which a President may impose tariffs. PI Reply 12-13. But *Yoshida* was decided *after* Section 122 was enacted, yet that court rejected the idea that statutes applicable in non-emergency situations (such as Section 122) can narrow the powers available in an emergency. *See* 526 F.2d at 578 ("trade acts" that do not involve "national emergency powers" did not narrow TWEA's scope). In any event, the intersecting timelines of the *Yoshida* litigation and the enactment of Section 122 only confirm that Congress intended to give the President broad emergency powers to impose tariffs. *See V.O.S. Selections*, ECF No. 27 at 4-5.

Plaintiffs' remaining arguments—that *these* tariffs go beyond IEEPA's authorization, PI Reply 16-19—do not go to whether IEEPA "provides . . . for tariffs," 28 U.S.C. § 1581(i), so even under Plaintiffs' merits-first approach to deciding the jurisdiction, the Court should not consider them at this stage.

## II.    Transfer, Not Dismissal, Is The Appropriate Action Here

Plaintiffs alternatively request that the Court dismiss, rather than transfer, this action. Opp. 11. Their sole reason—so they "may file an immediate appeal to the D.C. Circuit," *id.*—reveals why transfer, not dismissal, is necessary here. The D.C. Circuit has cautioned litigants against "fil[ing] appeals in our court which should more properly have been filed in the Federal Circuit," and emphasized that transfer under 28 U.S.C. § 1631 is "in the interest of justice" when "special jurisdictional provisions" are at issue. *Pro. Managers' Ass'n v. United States*, 761 F.2d 740, 745 & n.5 (D.C. Cir. 1985); *see, e.g.*, *Amerijet Int'l, Inc. v. DHS*, 43 F. Supp. 3d 4, 21 (D.D.C. 2014) (Contreras, J.) ("transfer, not dismissal, is the preferable disposition" when the transferee forum is already evaluating "markedly similar" "factual, legal, and procedural issues"); *Ghebreyesus v. Fed. Democratic Republic of Ethiopia*, No. 21-cv-2865, 2022 WL

4534631, at *5 (D.D.C. Sept. 28, 2022) (transferring case to "avoid piecemeal litigation over related claims, and potential appeals, in two different courts").  Plaintiffs would be free to raise their jurisdictional arguments to the Court of International Trade, but this Court should not indulge a request for dismissal made expressly to circumvent special jurisdictional provisions and evade review by the Court of International Trade and the Federal Circuit.

## CONCLUSION

For these reasons, the Court should transfer this action to the Court of International Trade.

DATED: May 12, 2025

OF COUNSEL:

ALEXANDER K. HAAS
Director

STEPHEN M. ELLIOTT
Assistant Director
U.S. Department of Justice
Civil Division
Federal Programs Branch

SOSUN BAE
Senior Trial Counsel
LUKE MATHERS
BLAKE W. COWMAN
COLLIN T. MATHIAS
Trial Attorneys
U.S. Department of Justice
Civil Division
Commercial Litigation Branch

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Catherine M. Yang
CATHERINE M. YANG
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044
(202) 514-4336
catherine.m.yang@usdoj.gov
*Attorneys for Defendants*

15