**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEARNING RESOURCES, INC., *et al.,* | |
| *Plaintiffs,* | |
| v. | Civil Case No. 1:25-cv-01248-RC |
| DONALD J. TRUMP, *et al.,* | |
| *Defendants.* | |

**JOINT BRIEF OF *AMICI CURIAE* EMILY LEY PAPER, INC., D/B/A SIMPLIFIED;
KILO BRAVA LLC; BAMBOLA LLC; KIM'S CLOTHES AND FASHION LLC; AND
ROKLAND LLC IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

John J. Vecchione
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
(202) 869-5210
john.vecchione@ncla.legal

*Counsel for Amici Curiae*

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................ iii

INTEREST OF *AMICI CURIAE* ...................................................................................... 1

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

    I.    IEEPA DOES NOT PROVIDE FOR CIT JURISDICTION ........................................... 3

        A.    No Case Cited by the Government Establishes that the CIT has Jurisdiction ............... 3

        B.    This Case Centers on Constitutional Questions and Questions of Federal Statutory Interpretation and this Court is the Appropriate Forum to Answer these Questions...... 6

CONCLUSION ................................................................................................................. 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arjay Associates, Inc. v. Bush*,
  891 F.2d 894 (Fed. Cir. 1989) ................................................................. 5

*Commodities Export Co. v. U.S. Customs Service*,
  957 F.2d 223 (6th Cir. 1992) ................................................................. 5

*Conoco, Inc. v. U.S. Foreign-Trade Zones Bd.*,
  18 F.3d 1581 (Fed. Cir. 1994) ................................................................. 7

*Diegelmann v. Yellen*,
  No. CV 24-1090, 2024 WL 4880468 (D.D.C. Nov. 25, 2024) ................................ 7

*Kokkonen v. Guardian Life Ins. Co.*,
  511 U.S. 375 (1994)................................................................. 2

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024)................................................................. 3, 7

*Michael Simon Design Inc. v. United States*,
  609 F.3d 1335 (Fed. Cir. 2010) ................................................................. 6

*Solar Energy Industries Association v. United States*,
  111 F.4th 1349 (Fed. Cir. 2024) ................................................................. 6

*Sprint Commc'ns v. Jacobs*,
  571 U.S. 69 (2013)................................................................. 2

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)................................................................. 2

*Totes-Isotoner Corp. v. United States*,
  594 F.3d 1346 (Fed. Cir. 2010) ................................................................. 5

*Transpacific Steel LLC v. United States*,
  4 F.4th 1306 (Fed. Cir. 2021) ................................................................. 6

*United States v. U.S. Shoe Corp.*,
  523 U.S. 360 (1998)................................................................. 4, 5

*Util. Air Regul. Grp. v. EPA*,
  573 U.S. 302 (2014)................................................................. 4

*Van Loon v. Dep't of the Treasury*,
  122 F.4th 549 (5th Cir. 2024) ................................................................. 7

**Statutes**

19 U.S.C. § 1862................................................................. 4

19 U.S.C. § 2253................................................................. 4

19 U.S.C. § 2411................................................................. 4

26 U.S.C. § 4461 ................................................................................................ 4

28 U.S.C. § 1331 ................................................................................................ 2

28 U.S.C. § 1581 ................................................................................................ 3

50 U.S.C. § 1701 ................................................................................................ 2

Omnibus Trade and Competitiveness Act of 1988,
    Pub. L. No. 100-418, § 2443, 102 Stat. 1107 (1988) ................................. 5

**Other Authorities**

Eric R. Bolinder,
    *Seizing the Duty of Congress: The President's Unilateral Implementation of Tariffs Is
    Unconstitutional*, 101 Ind. L. J. Suppl. (forthcoming 2025) ....................... 3

Tom Campbell,
    *Presidential Authority to Impose Tariffs*, 83 La. L. Rev. 595 (2023) .......................... 3

## INTEREST OF *AMICI CURIAE*[1]

*Amici* are five small businesses who are plaintiffs in a lawsuit challenging Executive Orders that impose tariffs purportedly based on Presidential authority under the International Emergency Economic Powers Act ("IEEPA"). *Amici*'s case is pending in the U.S. District Court for the Northern District of Florida. See list of *amici* in the appendix to this brief.

As small businesses, *amici* are suffering devasting injuries from the tariffs imposed by these Executive Orders. *Amici* have a strong interest in challenges to IEEPA-based tariffs being heard in federal district court, where Congress placed jurisdiction under 28 U.S.C. § 1331, and not in the Court of International Trade ("CIT"), which does not have jurisdiction. In the same vein, *amici* have a strong interest in respecting the exclusive control the Constitution grants Congress over tariff policy and over federal jurisdiction. Just as Congress did not grant the President authority to order tariffs under IEEPA, it did not grant the CIT authority to hear cases arising from IEEPA, which is not a tariff statute.

## INTRODUCTION

In support of those interests of *amici*, this brief addresses two topics. First, it explains that none of the CIT cases that Defendants cite support CIT jurisdiction over an IEEPA matter—as distinct from a matter where the parties agree the tariff at issue was authorized by statute. Second, this brief explains why Defendants' argument that "tariff matters" should be decided in a single specialty court is irrelevant here—in short, because this case involves IEEPA, which is not a tariff statute, rather than a statute that the relevant parties agreed authorized tariffs.

---

[1] No party's counsel authored any part of this brief and no person or entity, other than *amici curiae* and their counsel, paid for the brief's preparation or submission.

## ARGUMENT

The Court should reject Defendants' Motion to Transfer and retain jurisdiction over this Complaint. The Court's jurisdiction is squarely provided by 28 U.S.C. § 1331 because Plaintiffs' Complaint raises federal statutory and constitutional questions. This jurisdiction can be eliminated only if another statute displaces it as expressly as § 1331 provides for it. Here, Defendants' argument does not meet that exacting standard.

The dispute in this case arises out of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 *et seq.*, which never mentions tariffs. IEEPA authorizes the President to counter foreign threats by imposing the economic sanctions it describes. It does not permit him to order Americans to pay tariffs. IEEPA cannot, therefore, provide the express authorization that would be required to eliminate this Court's § 1331 jurisdiction.

Ultimately—it is Defendants' burden to show otherwise–that exclusive jurisdiction lies in the United States Court of International Trade (CIT). *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). This Court must decide whether Defendants have met that burden, because every court must decide its own jurisdiction, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), and every court is obligated to hear every case within that jurisdiction, *Sprint Commc'ns v. Jacobs*, 571 U.S. 69, 77 (2013).

Here, none of the authorities cited by the government establish that jurisdiction is exclusively held by the CIT. Instead, the authorities cited by the government establish that, *if IEEPA actually does authorize tariffs*, then a constitutional or administrative challenge to those tariffs should be heard at the CIT. But this begs the question and assumes the falsity of Plaintiffs' central argument. Here, Plaintiffs argue that IEEPA *does not* authorize tariffs, and accordingly that this dispute does not arise "arises out of" a law that "provid[es] for … tariffs." 28 U.S.C.

§ 1581(i)(B). None of the authorities cited by the government establish that such a challenge must be heard in the CIT.

Accordingly, because Defendants must meet a high burden to show that the CIT has exclusive jurisdiction, and because Defendants have failed to meet that burden, this Court should reject Defendants' Motion to Transfer.

## I.     IEEPA DOES NOT PROVIDE FOR CIT JURISDICTION

This action "arises out of" IEEPA, and accordingly, Defendants must show that IEEPA "provid[es] for … tariffs." 28 U.S.C. § 1581(i)(B). But IEEPA does not refer to tariffs or any synonym for that word. Statutory silence cannot be construed as a delegation of authority. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).[2] Accordingly, here, the action does not arise out of a law that provides for tariffs, and therefore this Court has jurisdiction to consider the merits of the case. While Defendants cite several cases that they assert show otherwise, none of these cases is on point.

### A.  No Case Cited by the Government Establishes that the CIT has Jurisdiction

The government, in its Motion to Transfer, cites several cases that it claims support the idea that transfer is appropriate in this case. But *none of the cases cited* actually support this proposition. Instead, the cases irrelevantly establish that *when all parties agree that a challenged law authorizes tariffs or embargoes*, a challenge to that law is properly heard only at the Court of International Trade (CIT). But that is not the case here.

---

[2] This is also the convincing view of learned commentary on the statute as well. *See* Tom Campbell, *Presidential Authority to Impose Tariffs*, 83 La. L. Rev. 595 (2023); Eric R. Bolinder, *Seizing the Duty of Congress: The President's Unilateral Implementation of Tariffs Is Unconstitutional*, 101 Ind. L. J. Suppl. (forthcoming 2025).

There is a reason the government cannot find a previous IEEPA case in the CIT: no prior president thought that IEEPA provided tariff authority. Indeed, in the more than fifty-year history since IEEPA was passed, no president has ever tried to use IEEPA to impose tariffs. And with good reason; as Plaintiffs explain in their Complaint, ECF 1 ¶ 68, IEEPA does not use the word tariffs, and tariff policy is set by a wide range of other laws that have nothing to do with IEEPA.[3] Seven other presidents have held office since Congress enacted IEEPA, and none have ever suggested that IEEPA authorized the imposition of tariffs.

Because no president other than President Trump has tried to use IEEPA to impose tariffs, the government cannot find a case to support its contention that President Trump's mere assertion that tariffs are involved is sufficient to require jurisdiction at CIT. Instead, the government cites a number of other cases, but *in those cases all parties agreed that a challenged law authorized tariffs*.

For example, *United States v. U.S. Shoe Corp.*, 523 U.S. 360 (1998), Defs.' Mot. to Transfer, ECF 8 at 10, involved a challenge to the Harbor Maintenance Tax, "a tax on any port use … paid by … importer[s]." 26 U.S.C. § 4461. Central to the Court's decision in this case was the "key directive [] stated in 26 U.S.C. § 4462(f)(2), which instructs that for jurisdictional purposes, the HMT shall be treated as if such tax were a customs duty." *U.S. Shoe Corp*, 523 at

---

[3] Tariff statutes show that Congress "speak[s] clearly" when it authorizes tariffs. *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014). *See, e.g.,* § 201 of the Trade Act of 1974, which authorizes the President to "proclaim an increase in, or the imposition of, any *duty* on the imported article" or "proclaim a *tariff-rate* quota on the article," 19 U.S.C. § 2253(a)(3)(A), (B) (emphasis added); § 301 of the Trade Act of 1974, which authorizes the President to "impose *duties* or other import restrictions," 19 U.S.C. § 2411(c)(1)(B) (emphasis added); § 232 of the Trade Expansion Act, which refers to authority to change the level of "*duties*" on imports, 19 U.S.C. § 1862(a) (emphasis added).

365. No such directive exists in IEEPA, so this case does not indicate that a challenge to IEEPA should be heard at CIT.

Similarly, *Totes-Isotoner Corp. v. United States*, 594 F.3d 1346, 1350–51 (Fed. Cir. 2010), ECF 8 at 10, involved a challenge to the Harmonized Tariff Schedule of the United States (HTUS). Of course a challenge to specific implementation of the HTUS should be heard at CIT—no one disputes that. But here, the basis of Plaintiff's lawsuit is that IEEPA *does not* authorize tariffs and does not use the word tariffs. So, *Totes-Isotoner*, where the plaintiff expressly sought to challenge what even the plaintiff agreed was a duly licensed and authorized tariff for other constitutional reasons, is clearly not on point.

Nor is *Arjay Associates, Inc. v. Bush*, 891 F.2d 894 (Fed. Cir. 1989), ECF 8 at 10, relevant. *Arjay Associates* involved a constitutional challenge to the Omnibus Trade and Competitiveness Act of 1988 (OTCA). OTCA expressly directed the President to "impose, for a period of [three] years" a "prohibition on the importation into the United States of all products produced by Toshiba Machine Company." Pub. L. No. 100-418, § 2443, 102 Stat. 1107, 1365 (1988). The challenged Executive Order in that case, Executive Order 12661, simply implemented this Congressional embargo.

So, too, for *Commodities Export Co. v. U.S. Customs Service*, 957 F.2d 223, 229–30 (6th Cir. 1992). ECF 8 at 10. *Commodities* involved a challenge to a fee imposed on a duty-free warehouse under 19 U.S.C. § 1555. This dispute directly and admittedly related to customs procedures authorized by the underlying statute. In *Commodities*, the plaintiffs argued that the agency's actions violated their due process rights. The issue of jurisdiction was determined by *res judicata* because the CIT action determined that issue while the district court case in the 6th Circuit was still proceeding. Here, Plaintiffs dispute that *the underlying statute* (IEEPA) authorizes the

President to take any of the underlying actions. In addition, there the Court was bound by *res judicata* where this Court is not. Accordingly, the reasoning in *Commodities* is irrelevant.

Other cases Defendants cite similarly fail to show CIT jurisdiction over any IEEPA case. *Transpacific Steel LLC v. United States*, 4 F.4th 1306 (Fed. Cir. 2021), cited at ECF 8 at 10, involved a challenge to tariffs imposed under Section 232 of the Trade Expansion Act of 1962, not IEEPA. *Solar Energy Industries Association v. United States*, 111 F.4th 1349, 1351 (Fed. Cir. 2024), cited at ECF 8 at 10, involved a challenge to tariffs imposed under Section 201 of the Trade Act of 1974, not IEEPA. *Michael Simon Design Inc. v. United States*, 609 F.3d 1335 (Fed. Cir. 2010), cited at ECF 8 at 10, involved a challenge to executive actions modifying the HTUS schedules–but the proclamation at issue didn't rely on IEEPA for the authority to modify the schedules. In each one of these cases, the parties agreed that the underlying statute(s) authorized tariffs—so in every one of these cases, jurisdiction in the CIT was appropriate.

Defendants also erroneously assert that this case is "similar" to other cases over which the CIT has exercised jurisdiction. But those cases are, again, not at all like this one: None of them based jurisdiction on IEEPA. In every CIT case that Defendants cite, jurisdiction rested on a statute that expressly authorizes tariffs and, indeed, is located in Title 19, "Customs Duties." In fact, until a month ago, the CIT had never heard a single IEEPA case in the 47 years that the statute has been in effect.

### B. This Case Centers on Constitutional Questions and Questions of Federal Statutory Interpretation and this Court is the Appropriate Forum to Answer these Questions

Perhaps recognizing that no authority supports their motion, the government advances a different argument: that transfer would be appropriate because transferring trade cases to the CIT "consolidates this area of law 'in one place … with an already developed expertise in international

trade and tariff matters,' thus ensuring a 'degree of uniformity and consistency.'" ECF 8 at 9 (quoting *Conoco, Inc. v. U.S. Foreign-Trade Zones Bd*., 18 F.3d 1581, 1586 (Fed. Cir. 1994)).

This argument would make sense if Plaintiffs were raising constitutional or administrative law challenges to tariffs that the parties agreed were authorized by statute. Then, Plaintiffs' challenge would be similar to the many other trade challenges discussed above and, accordingly, the CIT would have jurisdiction. But that is *not* the basis of Plaintiffs' challenge in this case. Instead, in this case, the central questions are questions of statutory interpretation. Here, Plaintiffs ask the Court to recognize that—because IEEPA does not contain the word tariffs, and for the reasons raised in their Complaint—the President had no authority to impose tariffs under IEEPA. This question requires the Court to engage in statutory interpretation and constitutional analysis just as many other federal cases do. It does not require highly doctrinal expertise in tariff law or trade policy—*because IEEPA does not authorize tariffs*.

Indeed, district courts routinely hear IEEPA cases. IEEPA cases decided in this last year alone include *Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 560 (5th Cir. 2024), and *Diegelmann v. Yellen*, No. CV 24-1090, 2024 WL 4880468, at *1 (D.D.C. Nov. 25, 2024). This history indicates that, since IEEPA was enacted, the United States has understood that jurisdiction over IEEPA is held by district courts. *See Loper Bright*, 603 U.S. at 386 (stating that an "Executive Branch interpretation [that] was issued roughly contemporaneously with enactment of the statute and remained consistent over time" is entitled to great respect). That history contradicts Defendants' argument that IEEPA is a tariff statute and that, consequently, exclusive jurisdiction over IEEPA claims is held by the CIT.

## CONCLUSION

Because Defendants must meet a high burden to show that the CIT has exclusive jurisdiction, and because Defendants have failed to meet that burden, this Court should reject Defendant's Motion to Transfer and should not transfer this case.

May 08, 2025

Respectfully submitted,

*/s/ John J. Vecchione*
John J. Vecchione
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
Tel.: (202) 869-5210
Fax: (202) 869-5238
john.vecchione@ncla.legal

*Counsel for Amici Curiae*

8

## APPENDIX: LIST OF AMICI

The undersigned amici join this brief in their official capacities. They do not represent any party to this matter.

**Emily Ley Paper, Inc. d/b/a Simplified:** Simplified is a Florida corporation with its principal place of business in Pensacola, Florida. It sells premium planners, organizational tools, and home management products. A woman-owned and led business, Simplified's mission is to inspire and empower women with the tools they need to simplify their lives. Simplified has made and makes significant purchases from sources in China. The products it imports are not reasonably available from a supplier in the United States. Simplified has paid substantial tariffs and, because of the Tariff Executive Orders, will pay higher tariffs and suffer economic injuries including lost profits.

**Kilo Brava, LLC:** Kilo Brava LLC is a Florida limited liability company with its principal place of business in Sarasota, Florida. It designs and sells luxury loungewear, sleepwear, and swimwear. Kilo Brava has made and makes significant purchases from sources in China. The products it imports are made across six trusted factories in China with unique abilities that are not currently available in the United States. Kilo Brava has paid substantial tariffs since the February 1, 2025 Executive Orders, and will pay higher tariffs in the near future. Further, Kilo Brava will suffer economic injuries including lost profits in the coming months, because the retailers that typically carry the company's products are diminishing or forgoing their typical orders due to the increased costs caused by the tariffs.

**Bambola LLC:** Bambola LLC is a Florida limited liability company with its principal place of business in Sarasota, Florida. It sells luxury loungewear, sleepwear, and swimwear. Bambola has made and makes significant purchases from sources in China, as well as Bangladesh, Colombia, India, Italy, Morocco, the Philippines, and Turkey. The products it imports are not reasonably available from a supplier in the United States. Bambola has a current order from India, upon the arrival of which the tariff will be paid. In addition, Bambola has slowed any orders from other nations to assess the ability to import profitably. It is suffering economic injury and will pay higher tariffs on any imports.

**Kim's Clothes and Fashion LLC:** Kim's Clothes and Fashion LLC is a Florida limited liability company with its principal place of business in Jacksonville, Florida. It is a boutique store that sells affordable clothing and accessories for women. Kim's Clothes and Fashion has made and makes significant purchases from sources in China and Australia. The products it imports are not reasonably available from a supplier in the United States. Because of the Tariff Executive Orders, Kim's Clothes and Fashion will pay higher tariffs and suffer economic injuries including lost profits.

**Rokland LLC:** Rokland LLC is a Florida limited liability company with its principal place of business in Gainesville, Florida. It designs and distributes electronic products. Rokland has made and makes significant purchases from sources in China and Taiwan. The core parts Rokland needs to supply its clients cannot be made domestically, and thus under current definitions most of its products cannot be classified as "Made in America," even though design, quality control, and technical support all happen here in the United States. The products it

imports are not reasonably available from a supplier in the United States. Rokland has already paid and will continue to pay high tariffs because of the Tariff Executive Orders.