IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEARNING RESOURCES, INC., et al.,            ) | |
|                                                                    ) | |
|         Plaintiffs,      ) | |
|                                                                    ) | |
| v.                                                              ) | Civil Action No. 1:25-cv-01248-RC |
|                                                                    ) | |
| DONALD J. TRUMP, President of the United ) | |
| States, in his official capacity, et al.,            ) | |
|                                                                    ) | |
|         Defendants.   ) | |

**MOTION FOR A STAY
OF PRELIMINARY INJUNCTION PENDING APPEAL**

DATED: June 2, 2025

OF COUNSEL:

ALEXANDER K. HAAS
Director

STEPHEN M. ELLIOTT
Assistant Director
U.S. Department of Justice
Civil Division
Federal Programs Branch

SOSUN BAE
Senior Trial Counsel
LUKE MATHERS
BLAKE W. COWMAN
COLLIN T. MATHIAS
Trial Attorneys
U.S. Department of Justice
Civil Division
Commercial Litigation Branch

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

CATHERINE M. YANG
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044
(202) 514-4336
catherine.m.yang@usdoj.gov
*Attorneys for Defendants*

## **TABLE OF CONTENTS**

BACKGROUND ............................................................................................................................ 3
ARGUMENT ................................................................................................................................ 4
    I.    Legal Standards .................................................................................................................. 4
    II.   The United States Is Likely To Succeed On Appeal ......................................................... 5
    III.  Defendants Will Suffer Irreparable Harm Absent A Stay .............................................. 10
    V.   The Public Interest Is Served By A Stay ........................................................................ 14
CONCLUSION ........................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Adams v. Vance*,
  570 F.2d 950 (D.C. Cir. 1978) ........................................................................................... 11

*Barnes v. United States*,
  No. 25-00043, 2025 WL 1483384 (Ct. Int'l Trade May 23, 2025) ......................................... 5

*Bd. of Trs. of Univ. of Ill. v. United States*,
  289 U.S. 48 (1933) ............................................................................................................. 9

*Bors v. Allen*,
  607 F. Supp. 2d 204 (D.D.C. 2009) ................................................................................... 11

*Coalition to Preserve the Integrity of American Trademarks v. United States*,
  790 F.2d 903 (D.C. Cir. 1986) ............................................................................................. 8

*Cornet Stores v. Morton*,
  632 F.2d 96 (9th Cir. 1980) ................................................................................................. 7

*Emily Ley Paper, Inc. v. Trump*,
  2025 WL 1482771 (N.D. Fla. May 20, 2025) ....................................................................... 5

*Georgia v. Public.Resource.Org, Inc.*,
  590 U.S. 255 (2020) ............................................................................................................ 9

*Guerra v. Scruggs*,
  942 F.2d 270 (4th Cir. 1991) ............................................................................................. 11

*Henry Pollak, Inc. v. Blumenthal*,
  444 F. Supp. 56 (D.D.C. 1977) ............................................................................................ 7

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) ............................................................................................................ 5

*Holder v. Humanitarian L. Project*,
  561 U.S. 1 (2010) .............................................................................................................. 12

*Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*,
  17 F.3d 691 (4th Cir. 1994) ............................................................................................... 13

*K Mart Corp. v. Cartier, Inc.*,
  485 U.S. 176 (1988) ............................................................................................................ 8

*Lee v. Garland*,
  120 F.4th 880 (D.C. Cir. 2024) .......................................................................................... 10

*Marshall Field & Co. v. Clark*,
  143 U.S. 649 (1892) .................................................................................................. 11

*MediNatura, Inc. v. FDA*,
  998 F.3d 931 (D.C. Cir. 2021) ................................................................................... 14

*Miami Free Zone Corp. v. Foreign Trade Zones Bd.*,
  22 F.3d 1110 (D.C. Cir. 1994) ..................................................................................... 7

*Nat'l Treasury Emps. Union v. Trump*,
  No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) .............................. 5, 14

*Nken v. Holder*,
  556 U.S. 418 (2009) .................................................................................................... 4

*Parrish v. Brownlee*,
  335 F. Supp. 2d 661 (E.D.N.C. 2004) ....................................................................... 11

*Qualls v. Rumsfeld*,
  357 F. Supp. 2d 274 (D.D.C. 2005) .......................................................................... 11

*SCM Corp. v. ITC*,
  549 F.2d 812 (D.C. Cir. 1977) .................................................................................... 7

*Scripps-Howard Radio, Inc. v. FCC*,
  316 U.S. 4 (1942) ........................................................................................................ 4

*Sunpreme v. United States*,
  2017 WL 65421 (Ct. Int'l Trade Jan. 5, 2017) ......................................................... 13

*Trump v. Hawaii*,
  585 U.S. 667 (2018) .................................................................................................. 12

*United States v. Collazo*,
  984 F.3d 1308 (9th Cir. 2021) .................................................................................... 9

*United States v. Yoshida Int'l, Inc.*,
  526 F.2d 560 (CCPA 1975) ........................................................................................ 8

*V.O.S. Selections, Inc. v. United States*,
  2025 WL 1514124 (Ct. Int'l Trade May 28, 2025) ................................................ 2, 5

*Webber v. DHS*,
  2025 WL 1207587 (D. Mont. Apr. 25, 2025) ............................................................ 5

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................................ 12, 14

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017) .................................................................................................. 10

**Statutes and Constitutional Provisions**

19 U.S.C. 2483 ............................................................................................................... 6

19 U.S.C. § 3004(c)(1)(C) ............................................................................................. 6

19 U.S.C. § 1202 ............................................................................................................ 6

19 U.S.C. § 1806(2) ....................................................................................................... 9

28 U.S.C. § 1581 ............................................................................................................ 7

28 U.S.C. § 1581(i) .................................................................................................... 5, 8

28 U.S.C. § 1581(i)(1) ................................................................................................... 2

28 U.S.C. § 1581(i)(1)(B) .............................................................................................. 6

50 U.S.C. § 1702 ............................................................................................................ 8

U.S. Const. art. II ......................................................................................................... 10

**Rules**

Federal Rule of Civil Procedure 62(d) ......................................................................... 4

**Executive Orders**

Executive Order 14257, 90 Fed. Reg. 15,041 (Apr. 7, 2025) ................................. 6, 12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEARNING RESOURCES, INC., et al.,        ) | |
| ) | |
| Plaintiffs,                              ) | |
| ) | |
| v.                                       ) | Civil Action No. 1:25-cv-01248-RC |
| ) | |
| DONALD J. TRUMP, President of the United ) | |
| States, in his official capacity, et al., ) | |
| ) | |
| Defendants.                              ) | |

## MOTION FOR A STAY
## OF PRELIMINARY INJUNCTION PENDING APPEAL

Pursuant to Federal Rule of Civil Procedure 62, defendants respectfully request that the Court stay its May 29, 2025 preliminary injunction order, pending the defendants' appeal. ECF No. 35. Defendants' counsel contacted counsel for plaintiffs on their position, and plaintiffs' counsel stated, "[p]laintiffs oppose the motion for the reasons set forth in this Court's May 29 opinion and do not intend to file a separate response (unless the Court orders one)."

Congress has long delegated to the President broad powers to impose tariffs in a wide range of circumstances, including to address national emergencies pursuant to the International Emergency Economic Powers Act (IEEPA). In April 2025, President Trump declared that numerous acute emergencies, ranging from America's exploding trade deficit and the crisis of fentanyl importation, should be dealt with by imposing tariffs on the responsible foreign parties. No one disputes—and no court has questioned—that the President validly declared these emergencies under IEEPA and the National Emergencies Act (NEA). The President deemed those tariffs necessary to correct decades of trade imbalances and asymmetrical tariffs against America; to eliminate the drain of trillions of dollars from America's economy; to reorient the global economy on a more equitable basis; to strengthen the United States's defense-industrial

base to avoid compromising national-security functions; and to induce Mexico, Canada, and the People's Republic of China (PRC) to stem the deadly tide of fentanyl and other drugs into our country.

Those tariffs have already prompted dozens of countries to negotiate with the United States to realize historic trade deals. And the combination of tariffs and future trading agreements has also yielded collateral diplomatic benefits for global crises—for instance, by facilitating President Trump's successful intercession in the burgeoning conflict between nuclear powers India and Pakistan. Lutnick Decl. ¶ 18.

Yet this court issued an incorrect preliminary injunction declaring that IEEPA does not authorize any tariffs at all—even though IEEPA incorporates the same language that Congress has used to authorize other broad tariffs. That interpretation contravenes IEEPA's text, structure, and history, as well as precedent. And it defies the separation of powers, overriding Congress's decision to delegate broad tariff authority to the President—as Congress has done since the dawn of the Republic—and instead hobbling IEEPA as an international diplomatic tool.

This Court lacks jurisdiction to rule on these issues at all. The Court of International Trade (CIT) has "exclusive jurisdiction" over "any civil action commenced against" the federal government "that arises out of any law of the United States providing for . . . tariffs." 28 U.S.C. § 1581(i)(1)(B). Five days ago, the CIT held that it had exclusive jurisdiction over a virtually identical challenge because "a challenge to a presidential action that imposes tariffs, duties, or other import restrictions is one that arises from a 'law providing for' those measures." *V.O.S. Selections, Inc. v. United States*, 2025 WL 1514124, at *7-8 (Ct. Int'l Trade May 28, 2025). And the D.C. Circuit has repeatedly held that the CIT, not district courts, must resolve jurisdictional disputes.

2

Although the Court limited its injunction to the parties and delayed enforcement until June 12 to allow for appellate review, a further stay pending appeal is imperative. By holding the tariffs invalid, the Court's ruling usurps the President's authority and threatens to disrupt sensitive, ongoing negotiations with virtually every trading partner by undercutting the premise of those negotiations—that the President's tariffs are a credible threat. Those negotiations currently stand at a delicate juncture, as four Cabinet members' declarations underscore. Meanwhile, plaintiffs face no harm from a stay; they can fully remedy any harms by obtaining a refund of any tariffs ultimately held invalid. A stay of the preliminary injunction would merely preserve the *status quo* during the pendency of our appeal.

## BACKGROUND

On April 22, 2025, plaintiffs—Learning Resources, Inc. and hand2mind, Inc.—sued in this Court, rather than in the United States Court of International Trade (CIT), challenging the President's invocation of the International Emergency Economic Powers Act (IEEPA) to impose tariffs on imports in response to several national emergencies related to fentanyl and reciprocal trade barriers. Compl., ECF No. 1. Specifically, plaintiffs argued that Executive Order 14,195, Executive Order 14,257, and other amending orders, each of which modified the Harmonized Tariff Schedule of the United States (HTSUS) to provide for duties on imports, are unlawful. *Id*.

That same day, defendants moved to transfer the case to the CIT. ECF No. 8. Two days later, plaintiffs moved for a preliminary injunction. ECF No. 9. After completion of briefing, the Court held a hearing on May 27, 2025.

The Court denied transfer and granted a preliminary injunction. Dkt. 37. The court interpreted § 1581(i)(1) to mean that jurisdiction over challenges to tariffs imposed under IEEPA "turns on whether," on the merits, "IEEPA is a 'law . . . providing for' 'tariffs, duties, fees or

3

other taxes on the importation of merchandise for reasons other than the raising of revenue.'" *Id.* at 13. The Court answered that question in the negative, holding (unlike the CIT) that IEEPA does not allow *any* tariffs. *Id.* at 16-28. In doing so, the Court expressly disagreed with the interpretation of IEEPA's predecessor statute adopted by the Federal Circuit's predecessor court, and disagreed that Congress had ratified that interpretation by incorporating in IEEPA the operative language of the predecessor statute. *Id.* at 23-27.

On the equities, the Court agreed with the government "that the public has a compelling interest in the 'President's conduct of foreign affairs and efforts to protect national security.'" *Id.* at 32. The Court concluded, however, that any harm to the government from an injunction in the plaintiffs' favor would be marginal given that the harms articulated in the Cabinet members' declarations "will flow, if at all, from the . . . sweeping order" previously issued by the CIT. *Id.*

The Court stayed its order for 14 days to allow for appellate review. *Id.* at 26. Given the significance of these issues and the effects of this Court's order, defendants intend to expeditiously seek a stay from the D.C. Circuit and will relay the Court's decision on this motion to the D.C. Circuit immediately.

**ARGUMENT**

**I.    Legal Standards**

"The power to stay a judgment pending appeal is part of a court's 'traditional equipment for the administration of justice.'" *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quoting *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9-10 (1942)). Federal Rule of Civil Procedure 62(d) applies to stays of injunctions pending an appeal. Rule 62(d) provides that "the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Rule 62(e) eliminates the bond requirement "when granting a stay on

an appeal by the United States."

The four factors relevant to issuance of a stay of a preliminary injunction pending appeal are well established:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (citations omitted); *see also Nat'l Treasury Emps. Union, Trump*, No. 25-5157, 2025 WL 1441563, at *1 (D.C. Cir. May 16, 2025). As discussed below, all four factors support granting defendants' motion.

## II.   The United States Is Likely To Succeed On Appeal

Defendants are likely to prevail on appeal because this Court lacks jurisdiction over this case and because IEEPA authorizes the tariffs at issue.

*First*, this Court lacks jurisdiction to issue an injunction because the Court of International Trade has exclusive jurisdiction over this matter pursuant to 28 U.S.C. § 1581(i), as multiple courts have concluded. *See V.O.S. Selections, Inc. v. United States*, No. 25-00066, 2025 WL 1514124, at *7-8 (Ct. Int'l Trade May 28, 2025) (three-judge panel) (explaining in detail why "[t]he Court of International Trade has exclusive jurisdiction to hear this action under 28 U.S.C. § 1581(i)."); *Princess Awesome v. CBP*, No. 25-cv-0078 (Ct. Int'l Trade) (exercising jurisdiction over materially indistinguishable IEEPA challenge); *Barnes v. United States*, No. 25-00043, 2025 WL 1483384, at *3 (Ct. Int'l Trade May 23, 2025) (concluding the court "has Section 1581(i) jurisdiction over this case."); *Webber v. DHS*, 2025 WL 1207587, at *6 (D. Mont. Apr. 25, 2025) (transferring case raising a materially indistinguishable IEEPA challenge to the CIT); *Emily Ley Paper, Inc., v. Trump*, 2025 WL 1482771, at *8 (N.D. Fla. May 20, 2025) (same).

5

The CIT has exclusive jurisdiction because IEEPA is a law providing for tariffs, as CIT has held and defendants have argued at length. Significantly, this Court also lacks jurisdiction *regardless* of whether IEEPA authorizes the tariffs at issue. *See V.O.S. Selections*, 2025 WL 1514124, at *7-8. As explained in defendants' motion to transfer briefing, and as conceded by plaintiffs, the executive orders at issue imposed tariffs by modifying the HTSUS. ECF No. 21 at 3-4. The HTSUS, including the President's modifications to the HTSUS, is a law of the United States that provides for tariffs. 19 U.S.C. §§ 1202, 3004(c)(1)(C). Indeed, each executive order in question provided that the President's modifications were made under "section 604 of the Trade Act of 1974, as amended (19 U.S.C. 2483)," Executive Order 14257, 90 Fed. Reg. 15,041 (Apr. 7, 2025), rendering each modification a provision of "law for all purposes" regardless of whether IEEPA permits the President to impose tariffs. 19 U.S.C. § 3004(c)(1)(C) (providing that "[e]ach modification or change made to the [HTSUS] by the President under authority of law (including section 604 of the Trade Act of 1974 [19 U.S.C. 2483])" is "considered to be [a] statutory provision[] of law for all purposes"). This "civil action commenced against the United States, its agencies, [and] its officers" thus "arises out of any law of the United States providing for . . . tariffs . . . on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

Even if section 1581(i)(1)(B) did not provide jurisdiction, section 1581(i)(D) would. Section 1581(i)(D) provides the CIT with jurisdiction over the administration and enforcement "with respect to matters" referred to in the subparagraphs above it. One of those subparagraphs concerns "tariffs." 28 U.S.C. § 1581(i)(1)(B). The jurisdictional grant addresses something different from subsection (i)(1)(B). Subsection (i)(1)(B) grants jurisdiction over, among other things, laws providing for tariffs. But section 1581(1)(D) captures a wide swath of

6

"administration and enforcement." It does not limit jurisdiction to administration of enforcement of only laws "providing for tariffs"—it applies to any of the "matters" listed. This case is undoubtedly about the "matter" of tariffs, and plaintiffs are undoubtedly challenging the administration and enforcement of those tariffs, in addition to their threshold legality challenge. The President imposed tariffs, which required amendment to the HTSUS, which in turn requires enforcement by Customs and Border Protection. Tariffs cannot be imposed without Customs' enforcement. This point is reflected in plaintiffs' decision to name Customs and other agencies as defendants in their complaint. It makes sense that Congress wanted one court to oversee the administration and enforcement of tariffs—without that kind of uniformity, it is possible to have competing injunctions from different courts. And that is exactly what has happened here. The Federal Circuit has temporarily stayed the CIT's injunction, yet this Court's order conflicts with that stay. This lack of uniformity threatens chaos and is unadministrable for CBP—and the problem will only get worse as more cases are filed.

Accordingly, there is a strong likelihood that the D.C. Circuit will hold that the CIT has jurisdiction over plaintiffs' claims. The D.C. Circuit previously affirmed a decision that this court lacked jurisdiction to consider a lawsuit challenging tariffs imposed under identical language in TWEA. *Henry Pollak, Inc. v. Blumenthal*, 444 F. Supp. 56, 60 (D.D.C. 1977), *aff'd*, 593 F.2d 1371 (D.C. Cir. 1979), *cert. denied*, 444 U.S. 836 (1979) ("The plain words of [28 U.S.C. § 1581's narrower predecessor statute] indicate that litigation involving the surcharge program belongs in the Customs Court."); *see Cornet Stores v. Morton*, 632 F.2d 96, 100 (9th Cir. 1980) (similar). Indeed, the D.C. Circuit defers to the Federal Circuit's determination of the CIT's jurisdiction, even where it doubts the statutory reading in favor of exclusive jurisdiction is "the obvious one." *Miami Free Zone Corp. v. Foreign Trade Zones Bd.*, 22 F.3d 1110, 1113

7

(D.C. Cir. 1994); *SCM Corp. v. ITC*, 549 F.2d 812, 821 (D.C. Cir. 1977) (even when there were "serious questions" about the Customs Court's jurisdiction, holding that court "itself should be given the opportunity to utilize its own expertise concerning the applicable statutes, and to determine whether or not it has jurisdiction").

*K Mart Corp. v. Cartier, Inc.* is not to the contrary because, unlike the more recent *Miami Free Zone* decision, the D.C. Circuit, in its underlying decision, did not address deference to the Federal Circuit's jurisdictional determinations. *Coalition to Preserve the Integrity of American Trademarks v. United States*, 790 F.2d 903, 905-06 (D.C. Cir. 1986). As a result, the Supreme Court solely addressed a circuit split over the meaning of a fundamentally different tool—an "embargo"—which is unsurprising because, unlike tariffs imposed through modifications to the HTSUS, the CIT's jurisdiction over embargos is limited. *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 183-88 (1988); 28 U.S.C. § 1581(i).

*Second*, these Executive Orders are valid exercises of the broad authority Congress granted the President in IEEPA. The statute expressly authorizes the President to "regulate . . . importation." 50 U.S.C. § 1702. The Court, however, concluded that "regulate . . . importation" does not authorize the imposition of any tariffs. ECF No. 37 at 18.

There is a substantial likelihood that history will repeat itself and the D.C. Circuit will disagree with this Court's determination. That is precisely what occurred in *Yoshida*. After the trial court originally held that the "regulate . . . importation" language in TWEA did not authorize tariffs, the appellate court reversed. The Federal Circuit's predecessor concluded that the very same language that today exists in IEEPA gave President Nixon the power to impose an import duty surcharge. *United States v. Yoshida Int'l, Inc.*, 526 F.2d 560, 576 (CCPA 1975).

8

Although the *Yoshida* decision is not binding in this Court, Congress adopted its holding in enacting IEEPA. The House Report on IEEPA cited *Yoshida* and explained its holding, H.R. Rep. No. 95-459, at 5, as Congress imported the identical "regulate . . . importation" language from TWEA into IEEPA. As the Supreme Court has repeatedly stated, "when Congress 'adopt[s] the language used in [an] earlier act,'" courts "presume that Congress adopted also the construction given" to that language. *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 270 (2020) (cleaned up). This is especially true where, as here, the CCPA was the *only* federal appellate court with jurisdiction to consider the issue, making it "settled precedent," *United States v. Collazo*, 984 F.3d 1308, 1328 (9th Cir. 2021), and Congress knew about and discussed the *Yoshida* decision while enacting IEEPA, H.R. Rep. No. 95-459, at 5.

And *Yoshida*'s conclusion that "regulate . . . importation" authorizes tariffs was correct. The Supreme Court has repeatedly concluded that power to "regulate" commerce includes the authority to impose tariffs. *See, e.g.*, *Bd. of Trs. of Univ. of Ill. v. United States*, 289 U.S. 48, 58 (1933). And if that left doubt, tariffs are certainly a way of regulating *importation*—the terminology that not just IEEPA uses, but also the Trade Expansion Act of 1962 and the Trade Act of 1974. 19 U.S.C. §§ 1806(2) ("The term 'duty or other import restriction' includes (A) the rate and form of an import duty, and (B) a limitation, prohibition, charge, and exaction other than duty, imposed on importation or imposed for the regulation of imports."), 2481(2) ("The term 'other import restriction' includes a limitation, prohibition, charge, or exaction other than duty, imposed on importation or imposed for the regulation of importation.").

The D.C. Circuit will review questions regarding these matters *de novo* and is likely to hold not only that this Court lacked jurisdiction but also that the President acted within his

9

delegated authority when imposing tariffs under IEEPA. This Court should grant a stay pending appeal.

### III.   Defendants Will Suffer Irreparable Harm Absent A Stay

Absent a stay of the preliminary injunction pending appeal, defendants will face irreparable harm when the Court's temporary 14-day stay expires.

The Constitution grants the President the power to conduct foreign affairs and manage national security. U.S. Const. art. II, § 2; *see also Ziglar v. Abbasi*, 582 U.S. 120, 123 (2017) ("National-security policy . . . is the prerogative of Congress and the President."); *Lee v. Garland*, 120 F.4th 880, 889 (D.C. Cir. 2024) ("[The Constitution] vests the president with the executive power, which makes him the organ of the federal government in the field of international relations." (citations and quotation marks omitted)). Respectfully, the Court erred by interfering with the President's ability to conduct foreign affairs and manage national security. It should at minimum extend its temporary stay to a full stay pending appeal to limit the irreparable harm to national security and ongoing diplomatic efforts while defendants appeal.

In the underlying Executive Orders, the President declared national emergencies in light of what he found to be unusual and extraordinary threats to national security. Those findings touched off negotiations with dozens of countries to address the emergencies. Bessent Decl. ¶ 7; Greer Decl. ¶ 9; Lutnick Decl. ¶ 11; Rubio Decl. ¶ 9. Those negotiations have been one of the country's top foreign policy priorities and the focus of much of the country's diplomatic efforts since early April. Bessent Decl. ¶ 9; Greer Decl. ¶ 10; Lutnick Decl. ¶ 10; Rubio Decl. ¶ 11.

While this Court suggested that harms to foreign policy and diplomatic efforts would flow only, if at all, from the CIT's parallel ruling, ECF No. 37 at 32, any order calling into question the President's ability to impose the challenged tariffs has significant detrimental effects

on recent trade agreements and pending negotiations by severely constraining the President's leverage and undermining the premise of the ongoing negotiations. Lutnick Decl. ¶ 15; Greer Decl. ¶¶ 11-12; Rubio Decl. ¶ 12; Bessent Decl. ¶ 11. Those irreparable harms will become far more severe if the Court's order is not stayed for the duration of any appeals. A stay is thus critical to avoid immediate irreparable harm to United States foreign policy and national security. *See* Greer Decl. ¶ 12 (warning of "a foreign policy disaster scenario"); Rubio Decl. ¶ 3 (warning of "significant and irreparable harm to U.S. foreign policy and national security," and "threaten[ing] broader U.S. strategic interests nationally"); *Marshall Field & Co. v. Clark*, 143 U.S. 649, 691 (1892) ("it is often desirable, if not essential . . . to invest the "[P]resident with large discretion in matters arising out of the execution of statutes relating to trade and commerce with other nations"). As the D.C. Circuit has explained, "[t]his country's interests in regard to foreign affairs and international agreements may depend on the symbolic significance to other countries of various stances and on what is practical with diplomatic interaction and negotiation. Courts are not in a position to exercise a judgment that is fully sensitive to these matters." *Adams v. Vance*, 570 F.2d 950, 954-55 (D.C. Cir. 1978).

The harm to defendants is irreparable despite the injunction's limitation to duties paid by the plaintiffs personally because, in the national security context, courts must consider the aggregate effect of such injunctions. Injunctions of the military provide analogous context: There, "the court must consider the aggregate harm of all these possible claims, looking at the total effect of such cases." *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 286 (D.D.C. 2005) (cleaned up); *see also Bors v. Allen*, 607 F. Supp. 2d 204, 212 (D.D.C. 2009) ("[I]nterference in military personnel decisions [causes] great harm to the military because of the potential cumulative effect of multiple injunctions." (citation omitted)); *Guerra v. Scruggs*, 942 F.2d 270, 275 (4th Cir.

11

1991) (finding "substantial" harm to the Army, where upholding the injunction at issue would have a ripple effect, resulting in "a disruptive force as to affairs peculiarly within the jurisdiction of the military authorities"); *Parrish v. Brownlee*, 335 F. Supp. 2d 661, 669 (E.D.N.C. 2004) (looking to the proliferation of claims "in the aggregate" in weighing the equities). The disruption that would ripple out from this injunction, as countless importers and others claiming impact from the tariffs flood the courts, only underscores the manifest harm to defendants. *See also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (cautioning courts to "pay particular regard for the public consequences in employing the extraordinary remedy of injunction").

Moreover, the Court's ruling impairs the President's ability to use his powers under IEEPA to meaningfully respond to other threats. The very point of IEEPA, as distinct from the President's other tariff authorities, is to enable swift and flexible action in response to national emergencies. The Supreme Court has repeatedly recognized that the national security and foreign policy areas present "evolving threats," *Holder v. Humanitarian L. Project*, 561 U.S. 1, 34 (2010), and the President must therefore have "flexible authority" to address foreign policy interests, *Trump v. Hawaii*, 585 U.S. 667, 696 (2018). But this Court's ruling undermines that flexibility. Other tariff tools do not provide emergency authority to deal with serious threats in real time. Because they were not designed to address emergencies, their procedural prerequisites inject substantial delay into the Government's response—for instance, up to 375 days, more than a whole year, under Section 232. Lutnick Decl. ¶ 14. Where the emergencies confronting our nation include those that in the President's judgment have "hollow[ed] out" our manufacturing base, rendered "U.S. supply chains vulnerable to geopolitical disruption," and "rendered our defense-industrial base dependent on foreign adversaries," Executive Order 14257, 90 Fed. Reg.

12

15,041 (Apr. 7, 2025), the irreparable harm caused by the invalidation of the IEEPA tariffs is self-evidently immediate, grave, and enduring.

## IV.  A Stay Will Not Substantially Injure Other Parties

In sharp contrast to the extraordinary harm to defendants, a stay will not substantially injure the plaintiffs. For any plaintiff who is an importer, even if a stay is entered and defendants do not prevail on appeal, plaintiffs will assuredly receive payment on their refund with interest. "[T]here is virtually no risk" to any importer that they "would not be made whole" should they prevail on appeal. *See Sunpreme v. United States*, 2017 WL 65421, at *5 (Ct. Int'l Trade Jan. 5, 2017). The most "harm" that could incur would be a delay in collecting on deposits. This harm is, by definition, not irreparable. *See Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994). Plaintiffs will not lose their entitlement to a refund, plus interest, if the preliminary injunction is stayed, and they are guaranteed payment by defendants should the Court's decision be upheld. And defendants do not oppose the reliquidation of any entries of goods subject to IEEPA duties paid by plaintiffs that are ultimately found to be unlawful after appeal. Defendants have filed a stipulation to that effect with other importer-plaintiffs in *Princess Awesome v. CBP*, No. 25-cv-78 (Ct. Int'l Trade), ECF No. 17.

In contrast, if defendants subsequently prevail on appeal, the unpaid tariffs during the pendency of the appeal may not be fully recoverable. Indeed, in the Section 232 litigation, *Transpacific Steel LLC v. United States*, 19-cv-00009 (Ct. Int'l Trade), the United States issued refunds pursuant to the trial court's injunction, and was unable to recover payment for those duties from some importers after the tariffs were ultimately upheld on appeal.

As a result, plaintiffs would not be substantially injured and a stay would appropriately preserve the *status quo* until the appeals process has been finalized. In any event, plaintiffs'

claims of irreparable harm are somewhat dampened by their stated preference for dismissal over transfer. Presumably, if the tariffs threatened their very business, they would have preferred the protection of a transfer to the vulnerability of dismissal.

## V.    The Public Interest Is Served By A Stay

The balance of equities and the public interest—which merge where, as here, "the government is the party" against whom an injunction is sought, *MediNatura, Inc. v. FDA*, 998 F.3d 931, 945 (D.C. Cir. 2021)—strongly favor a stay. The public interest requires that the President be able to take all appropriate and feasible action to swiftly address identified threats to the United States' economy, military preparedness, and national security. *See Winter*, 555 U.S. at 24; *Nat'l Treas. Emps. Union*, 2025 WL 1441563 at *3 ("[P]reserving the President's autonomy under a statute that expressly recognizes his national-security expertise is within the public interest. To hold otherwise would give to the courts what the Constitution gave to Congress and the President."). The Court's injunction impairs the President's authority and is particularly harmful in ongoing trade negotiations. It does not serve the public interest for sensitive trade negotiations to grind to a halt, or result in unfavorable terms for the United States, before appellate review of this Court's decision.

## CONCLUSION

For these reasons, defendants respectfully request that the Court enter stay its preliminary injunction order pending the resolution of our appeal.

| | |
|---|---|
| DATED: June 2, 2025 | Respectfully submitted, |
| OF COUNSEL: | YAAKOV M. ROTH<br>Acting Assistant Attorney General |
| ALEXANDER K. HAAS<br>Director | ERIC J. HAMILTON<br>Deputy Assistant Attorney General |
| STEPHEN M. ELLIOTT<br>Assistant Director<br>U.S. Department of Justice<br>Civil Division<br>Federal Programs Branch | PATRICIA M. McCARTHY<br>Director<br><br>/s/ Claudia Burke<br>CLAUDIA BURKE<br>Deputy Director |
| SOSUN BAE<br>Senior Trial Counsel<br>LUKE MATHERS<br>BLAKE W. COWMAN<br>COLLIN T. MATHIAS<br>Trial Attorneys<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch | /s/ Justin R. Miller<br>JUSTIN R. MILLER<br>Attorney-In-Charge<br>International Trade Field Office<br><br>/s/ Catherine M. Yang<br>CATHERINE M. YANG<br>Trial Attorney<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>PO Box 480, Ben Franklin Station<br>Washington, DC 20044<br>(202) 514-4336<br>catherine.m.yang@usdoj.gov<br>*Attorneys for Defendants* |